**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jason HOUSER, Defendant–Appellant.**

No. 90–30043.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 7, 1990.

Decided Oct. 18, 1990.

As Amended on Denial of
Rehearing April 5, 1991.

**1370**

Richard J. Carstensen, Billings, Mont., for defendant-appellant.

Kris A. McLean, Asst. U.S. Atty., Helena, Mont., for plaintiff-appellee.

Before TANG, D.W. NELSON and CANBY, Circuit Judges.

D.W. NELSON, Circuit Judge:

Jason Houser appeals his conviction for conspiracy to distribute methamphetamine, claiming that the government failed to give the defense required discovery materials, that the elements of conspiracy were not established, and that evidence was improperly admitted by the district court. In addition, Houser claims that the career offender sentence he received was improper under the federal sentencing guidelines. We affirm appellant's conviction but vacate his sentence.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 25, 1988, Margaret Schmittou, a co-conspirator in this case, agreed to deliver an ounce of methamphetamine to William Mountsier. Schmittou did not know at the time that Mountsier was an undercover DEA agent.

At approximately 7:00 PM on September 8, 1988, Mountsier phoned Schmittou at her home and asked her to obtain methamphetamine. During that conversation, Schmittou's husband, Paul Schmittou, a friend named Mike Kuchera and appellant Jason Houser were also in her home. Schmittou's conversation was taped by Mountsier. Schmittou told Mountsier that she had been unable to obtain drugs for him. The critical portion of the conversation with regard to Houser's conviction is:

Mountsier: Ah, were you able to get it?

Schmittou: huh uh (negative)

Mountsier: No?

Schmittou: Nothing

Mountsier: Ah, are you going to be able to get it?

Schmittou: You mean in the near future or

Mountsier: Well I mean like today or tomorrow

Schmittou: Hold on a second

Schmittou: Hey, ah JAS, you know where's theres anything to locate (Unintelligible)

Schmittou: Okay, I asked another source, just came through the door

Mountsier: Well that's great

Schmittou: ... and he thinks so.

The government's case was based on the theory that Houser was the source referred to in this phone conversation and that he agreed to sell Schmittou an ounce of methamphetamine. After the conversation, Schmittou gave Houser $1000. He then left her home.

Schmittou had agreed to meet Mountsier at a restaurant with the methamphetamine at 9:00 PM. When she was late, Mountsier phoned her at home. She agreed to go to the restaurant even though Houser had not returned. She arrived at the restaurant at 9:40 PM.

Schmittou then phoned her home and spoke with Kuchera. Kuchera told her that Houser had only been able to purchase half an ounce of methamphetamine with the $1000. She asked Kuchera to borrow $200 from Paul Schmittou in order to complete the purchase. Paul Schmittou gave Kuchera the extra money.

Schmittou and Mountsier left the restaurant and returned to Schmittou's home. While Mountsier waited in the car, Schmittou entered the house and picked up the original half-ounce of methamphetamine from a counter. She went back to the car, gave the drugs to Mountsier, and told him that the other portion would arrive shortly. Schmittou and Mountsier then left and drove around.

Schmittou and Mountsier arrived back at the house. While Mountsier waited in the car, Schmittou went into the house and found that the second portion of the drugs had not yet arrived. Soon afterward, Houser arrived and entered the house. Schmittou then got the second half-ounce of methamphetamine and turned it over to Mountsier. Mountsier was not present

when Schmittou acquired either portion of the ounce and does not know first hand its source. Mountsier paid Schmittou $1200. Schmittou then drove Mountsier back to the restaurant and dropped him off.

On March 17, 1989, Houser was indicted for conspiracy to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1).

Schmittou was also charged in a ten-count indictment. She entered a plea agreement and pled guilty on two counts. As part of her plea agreement, Schmittou agreed to testify against Houser. Houser was tried in Billings, Montana on September 5–6, 1989. On September 6, the jury found him guilty.

As a result of two prior drug convictions, Houser was sentenced as a "career offender" under § 4B1.1 of the United States Sentencing Commission, *Guidelines Manual*. He was sentenced to 262 months in prison.

## DISCUSSION

### I. EXCULPATORY EVIDENCE

A. *Standard of Review.* The test for reversal as a result of a violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), is whether the exculpatory evidence that the government failed to disclose would have led the jury to entertain reasonable doubt about the defendant's guilt. *United States v. Alderdyce*, 787 F.2d 1365, 1369 (9th Cir.1986).

B. *Discussion.* The stenographer transcribing the tape of Mountsier's phone conversation with Schmittou originally typed the key sentence as "Hey, ah, Dave, you know where's theres [sic] anything to locate". At Agent Mountsier's direction, the stenographer changed the transcription to read "JAS" instead of "Dave". Mountsier claimed that the stenographer misheard the tape.

Houser made a general discovery request for exculpatory materials before trial. At trial, he asked for the original transcript with the word "Dave". He was not given the transcript, although his attorney was able to cross-examine the government witness used to introduce the corrected

transcript and to bring out the inconsistencies between the versions. In addition, Houser had access to the original tape, as did the jury.

Appellant claims that the government's refusal to give him a copy of the original transcription of the tape violates the rule of *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963), requiring the prosecution to give the defense all exculpatory information.

■ There are two types of *Brady* violations: (1) the refusal to turn over a specific piece of evidence requested before trial; and (2) the refusal to comply with a general request for evidence. *United States v. Goldberg,* 582 F.2d 483, 488 (9th Cir.1978), *cert. denied,* 440 U.S. 973, 99 S.Ct. 1538, 59 L.Ed.2d 790 (1979). We employ harmless error analysis when analyzing the first, specific request, type of *Brady* violation. *Id.* We use a stricter standard when analyzing the second type of error. "In the general request situation ... the requested evidence must be of a kind that 'creates a reasonable doubt that would not otherwise exist' " in order to constitute a *Brady* violation. *Id.* (quoting *United States v. Agurs,* 427 U.S. 97, 112, 96 S.Ct. 2392, 2401–02, 49 L.Ed.2d 342 (1976).

The alleged *Brady* violation in this case, if one occurred, would be of the second, general request, type. It was not until trial that Houser requested the original transcript. Therefore, we could reverse only if "the likelihood that the undisclosed evidence would have resulted in acquittal ... [is] more than a reasonable possibility." *Goldberg,* 582 F.2d at 489.

■ The failure to disclose the original transcript had little effect on the trial. The crucial question was what the tape itself said, not what a government stenographer believed it to have said. Whatever probative value the original transcription had was not lost to Houser, since his attorney was able to bring out the inconsistency between the two transcripts in cross-exami-

nation. The increased effectiveness of having an actual copy of the original transcript would have been very slight and certainly would not have affected the outcome of the trial. We therefore reject Houser's *Brady* claim.[1]

## II. CONSPIRACY

■ Houser claims that the evidence did not support a conviction for conspiracy to distribute methamphetamine because it pointed to the existence of one buyer-seller transaction. He supports the argument that a single buyer-seller transaction cannot be transformed into a conspiracy conviction by citing a Seventh Circuit case, *United States v. Braico,* 422 F.2d 543, 544 (7th Cir.), *cert. denied,* 398 U.S. 912, 90 S.Ct. 1712, 26 L.Ed.2d 74 (1970).

We have not accepted or rejected the rule that a single buyer-seller transaction is not a conspiracy. In one case we mention the rule in dicta, but do not rely upon it in reaching our decision. *United States v. Smith,* 832 F.2d 1167, 1172 (9th Cir.1987).

Like the *Smith* court, we find that we need not rely upon the buyer-seller rule in reaching our decision in this case. The evidence here indicates that this was more than an isolated transaction. Schmittou testified that she was in the business of dealing methamphetamine. She testified that she had several regular suppliers, including Houser. Therefore, there was evidence that Houser had been in the practice of selling drugs to Schmittou for redistribution. In addition, the fact that he sold her as much as an ounce on September 8 supports the finding that the drugs were sold for redistribution and not for personal consumption. Finally, as the transcript of the telephone conversation reveals, Houser was present when Schmittou was arranging the acquisition of the drugs for Mountsier. Clearly, Houser knew that Schmittou was buying the drugs to distribute to someone else and not for personal use.

---

**1.** In light of our conclusion that the failure to deliver the transcript did not affect the trial, we find it unnecessary to address the government's contention that the transcript could not consti- tute *Brady* material at all because the tape itself was produced and a copy provided to the defendant.

We find that it was not plain error for the district court to hold that Houser could be convicted of conspiracy to distribute narcotics.

## III. PRIOR CRIMES AND BAD ACTS

■ A. *Standard of review.* We review a district court's decision on the admissibility of evidence admitted under Fed. R.Evid. 404(b) for abuse of discretion. *United States v. Feldman*, 788 F.2d 544, 557 (9th Cir.1986). We also review a district court's decision on balancing probative value against prejudicial effect under Fed. R.Evid. 403 for abuse of discretion. *Id.*

■ B. *Discussion.* Houser claims that evidence of prior convictions for distribution of drugs and testimony of other drug transactions were improperly admitted. Evidence of prior crimes and bad acts can be admitted under Fed.R.Evid. 404(b) if it is to show motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake and not to show bad character. We have articulated a four-part test for analyzing evidence admitted pursuant to this rule: ·(1) there must be proof of the prior bad act based on sufficient evidence; (2) the crimes or acts must not be too remote; (3) the prior conduct must be similar to the acts defendant is charged with; and (4) the evidence must prove an essential element of the offense. *United States v. Miller*, 874 F.2d 1255, 1268, *reh'g denied* 884 F.2d 1149 (9th Cir.1989).

Here, there is sufficient proof supporting the prior crimes since Houser was convicted of committing them. The other drug transactions were brought into evidence through the testimony of those directly involved with the transactions. This satisfies the low threshold required by part one of this test.

Houser was convicted in 1984 of distribution of drugs. This is not a remote conviction and therefore can come within Rule 404(b). Likewise, the drug transactions several witnesses testified about occurred within approximately a year of Houser's arrest.

The prior conduct admitted into evidence was clearly similar to the crime appellant was charged with and therefore satisfies part three of the test.

Finally, the prior acts were admitted to show intent. *See United States v. Sigal,* 572 F.2d 1320, 1323 (9th Cir.1978). Intent is a critical element of both the conspiracy aspect of the charge and the distribution aspect. It is particularly important in this case because Houser argues that at most he accidentally walked into the situation and was not otherwise engaged in the distribution of drugs.

The evidence is admissible under Rule 404(b). We next analyze whether the probative value of the evidence outweighs its prejudicial effect under Rule 403. As discussed above, the evidence is quite probative to show Houser's intent. It is always possible that the similarity between the prior acts and the current offense would improperly affect the jury's deliberations, but the district court carefully instructed the jury on the limited purposes for which the evidence was admitted. Balancing the probative value of the evidence against its prejudicial effect and giving deference to the decisions of the district court, we find that the court did not abuse its discretion in admitting this evidence.

## IV. CAREER OFFENDER SENTENCE

A. *Standard of review.* The application of the career offender sentence under the sentencing guidelines is a question of law which we review *de novo*. *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

■ B. *Discussion.* Houser was convicted on June 7, 1984 of criminal sale of dangerous drugs. He was convicted of the same offense again on July 19, 1984. The first conviction was in state court, in Rosebud County, Montana. The second conviction was also in state court, in Yellowstone County, Montana. Because Houser was convicted of two prior crimes involving controlled substances, he was sentenced as a career offender under § 4B1.1 of the *Guidelines Manual.* This career offender status significantly increased his sentence.

Section 4A1.2(a)(2) of the sentencing guidelines states that in computing criminal history levels under the guidelines:

> Prior sentences imposed in unrelated cases are to be counted separately. Prior sentences imposed in related cases are to be treated as one sentence for purposes of the criminal history.

Houser argues that it was error for the sentencing court to count his prior drug convictions separately because they were related cases. Since § 4B1.1 requires two prior drug convictions as a condition for career offender status, Houser claims that his prior record does not satisfy this condition.

> The commentary to § 4A1.2 states that: Cases are considered related if they (1) occurred on a single occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing.

The issue in this case is whether the two prior drug convictions were cases which were "part of a single common scheme or plan."

There is no dispute over the fact that Houser's two 1984 drug convictions were the result of a single investigation. In fact, the two drug sales were between Houser and a single government agent. There was testimony at Houser's hearing that he was charged with two separate offenses only because the two drug sales took place in different counties. Had both sales occurred in the same county, he would have been tried for both transactions together. Thus Houser was charged and convicted of two offenses merely because of geography and not because of the nature of the offenses.

█ The guidelines require a sentencing judge to look behind the mere number of prior convictions to examine the circumstances of the convictions when determining whether or not they are related. In this case, Houser was convicted for participating in two drug sales, in a short period of time with one undercover government agent. There was significant evidence before the sentencing judge that these two drug sales were part of a "single common scheme or plan." There was no evidence before the court to contradict this finding. As a result, we find that the sentencing court erred in not treating the two prior convictions as related for purposes of calculating Houser's criminal history level. Since the convictions should be counted together, Houser is ineligible for career offender status.[2]

### CONCLUSION

We affirm Houser's conviction. However, because the trial court erred in calculating Houser's criminal history level, we vacate his sentence and remand for resentencing.

AFFIRMED in PART; REMANDED in PART.

---

**2.** Since we find that it was error for the sentencing court to treat Houser's prior drug convictions separately, we need not reach the issue of whether or not one of those two prior convictions was expunged.