988 F.2d 122
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ramon ALVAREZ, aka Jose Rodriguez-Rodriguez, Defendant-Appellant.
 No. 91-50849.
 United States Court of Appeals, Ninth Circuit.
 Submitted Nov. 4, 1992.*
Decided March 12, 1993.
 
 Appeal from the United States District Court for the Southern District of California, No. CR-90-1320-WBE; William B. Enright, District Judge, Presiding.
 S.D.Cal.
 AFFIRMED.
 Before BEEZER, KOZINSKI and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Ramon Alvarez challenges his jury conviction and sentence under the Sentencing Guidelines. He was convicted of kidnapping in violation of 18 U.S.C. § 1201(a)(5) and 18 U.S.C. § 2; taking a hostage in violation of 18 U.S.C. § 1201(a)(5), (d) and 18 U.S.C. § 2; and escape and attempted escape in violation of 18 U.S.C. § 751(a). The case arises out of Alvarez's participation in taking a prison guard hostage while in custody at the Federal Metropolitan Correction Center (MCC).
 
 
 3
 On appeal, Alvarez raises the following claims: (1) the district court erred in not severing the first six counts of the indictment relating to the December 17-18, 1990 hostage incident from Count Seven, which alleges an escape from custody on January 16, 1991; (2) the district court erred in giving its jury instruction on the defense of duress; (3) there was insufficient evidence to support a conviction on Count Seven; (4) the district court erred in allowing the government to present extrinsic evidence of Alvarez's prior bad acts; (5) the district court erred in admitting into evidence two prior escape attempts; (6) the district court erred in not allowing the defense to present surrebuttal testimony from Emilio Bravo and Alvarez; (7) the defense should have been allowed access to the personnel files of MCC Guards Houston and Gibson; and (8) the district court erred in sentencing by not acknowledging its power to make a downward departure based on an "incomplete duress" defense. We affirm in all respects.
 
 I. Facts
 A. The Underlying Drug Case
 
 4
 In early August, 1989, a confidential informant told San Diego Narcotics Task Force ("SDNTF") agents that Appellant Alvarez was interested in purchasing 100 kilograms of cocaine. Alvarez and codefendant Emilio Bravo negotiated with the informant and undercover SDNTF agents to purchase 100 kilograms of cocaine for $1 million.
 
 
 5
 On August 17, 1990, Alvarez pled guilty to a two count superseding information charging conspiracy to possess cocaine with intent to distribute in violation of 21 U.S.C. §§ 846 and 841(a)(1), and possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d). The plea was entered pursuant to a written plea agreement, which provided for the exchange of truthful information concerning the drug trafficking case for the government's recommendation of a downward departure from the Sentencing Guidelines.
 
 
 6
 After Alvarez entered his plea, he was separated from codefendant Bravo and transferred to the United States Penitentiary, Lompoc, California to await sentencing. On December 8, 1990, Alvarez was returned to MCC San Diego and placed in a cell with Bravo, against whom he was to provide evidence pursuant to his plea bargain. Bravo had previously learned of Alvarez's deal with the government through his attorney. Alvarez claims that Bravo threatened him to prevent his cooperation with the government, and that the guards at MCC rejected his request for a transfer.
 
 
 7
 Soon after his return to MCC, on December 17, 1990, Alvarez was brought to the U.S. Attorney's office to be debriefed. The meeting ended when it became clear that Alvarez would not cooperate. Later that afternoon, Alvarez was brought before the court for his sentencing hearing. Because of Alvarez's refusal to cooperate, the government declined to recommend a downward departure in his sentence. The court appointed new counsel and delayed sentencing. Alvarez never mentioned that he was placed in the same cell as Bravo or that Bravo had threatened him.
 
 
 8
 After the hearing, Alvarez was returned to his cell at the MCC. Later that evening, a fight broke out between Bravo and MCC Guard Robert Gibson, which ultimately led to the hostage taking incident that is the subject of this case. The sentencing in the drug case was delayed until after the verdict was rendered in this case.
 
 B. The Hostage Taking Incident
 
 9
 Alvarez returned to his cell at MCC on the evening of December 17, 1990. He testified that when he returned to the cell, Bravo was pleased that he refused to cooperate with the government. Officers at MCC noted that both Alvarez and Bravo were unusually quiet that evening.
 
 
 10
 At approximately nine o'clock that night, Officers Robert Gibson and Donnie Houston came to the cell in order to allow the prisoners a period of recreation. Officer Gibson testified that he opened the cell door, assuming incorrectly that Officer Houston had handcuffed Alvarez and Bravo, as is the usual practice before allowing them to leave their cell.
 
 
 11
 Bravo exited the cell and attacked Officer Gibson. A fight ensued. Bravo was armed with a knife-like metal object (a "shank") that he had been concealing in the cell. A second shank was in the cell where Alvarez remained. Officer Houston testified that he was lured into the cell by Alvarez, and when he entered, Alvarez pulled the other shank on him and held him in the cell by force. Alvarez claims that Houston came into the cell on his own and attacked him first.
 
 
 12
 Officer Gibson fought off Bravo's attack and eventually got the shank away from him. When help arrived in response to an emergency call by a trustee inmate, Bravo ran back to the cell. MCC personnel locked the door behind Bravo, unaware that Houston remained inside. When they realized Houston was in the cell, they ordered Alvarez and Bravo to put handcuffs on. They refused, and threatened to kill Houston if any rescue attempt was made.
 
 
 13
 For seventeen hours Alvarez and Bravo physically abused and threatened Officer Houston, while making various demands to facilitate their escape. They demanded keys to the cell door, a shotgun, access to the media, and a helicopter or airplane to return them to Cuba. During a tape recorded telephone conversation with his attorney, Alvarez claimed that he was participating in the hostage taking because Bravo would kill him if he refused.
 
 
 14
 According to the evidence presented by the government, which included a videotape of portions of the incident, Alvarez controlled the shank the majority of the time. He also participated in the mental and physical abuse of Officer Houston during the ordeal. Officer Houston testified that, at one point, Bravo took an hour long nap. Alvarez denies that this occurred.[1]
 
 
 15
 In the afternoon of December 18, 1990, Alvarez allegedly placed a pillowcase over Houston's head and Bravo stabbed him with the shank. Houston screamed for help, and a combined FBI Special Weapons and Tactics (SWAT) team and Bureau of Prisons Special Operation Response Team (SORT) created a diversion with an explosive device and entered the cell, freeing Officer Houston.
 
 C. January 16, 1991 Escape
 
 16
 The evidence presented at trial showed that on January 16, 1991, Alvarez was placed in a holding cell at the United States Marshal's Office after a court appearance related to the hostage taking incident. One of the doors to the cell had been inadvertently left unlocked and Alvarez exited through that door and ran into the adjacent parking garage of the federal building and courthouse. He was captured on a ramp in the garage after being observed by security officers monitoring surveillance equipment. When two Deputy U.S. Marshals apprehended Alvarez he did not resist at first, but he became combative as they approached the holding cell.
 
 II. Severance of Count Seven
 
 17
 A misjoinder of charges under Federal Rule of Criminal Procedure 8(a) is a question of law reviewed de novo. United States v. Terry, 911 F.2d 272, 276 (9th Cir.1990).
 
 
 18
 Federal Rule of Criminal Procedure 8(a) states that separate offenses may be joined if they "are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." The validity of joining offenses is determined solely by the allegations in the indictment. Id. Alvarez claims that since the first six counts of the indictment arise out of the December 17-18, 1990 hostage incident and Count Seven concerns an escape from custody on January 16, 1991, they are unrelated, and thus were improperly joined under Rule 8(a). The government argues that Count Seven is of "the same or similar character" as Count Six, which alleges an attempt to escape in the hostage incident, and is part of a "common scheme or plan" to escape from custody.
 
 
 19
 In this case, the allegations contained in Counts Six and Seven of the indictment are nearly identical. Both allege violations of 18 U.S.C. § 751(a) for escape and attempted escape by Alvarez while in custody in connection with the drug case. The only meaningful difference between the two counts is that they allege conduct occurring on different dates. The fact that offenses occur at different times and arise out of independent sets of events is not enough, alone, to bar joinder under Rule 8 if the offenses are of "the same or similar character." United States v. Bronco, 597 F.2d 1300, 1301 (9th Cir.1979).
 
 
 20
 Counts Six and Seven are of "the same or similar character." The fact that the escape and attempted escape occurred thirty days apart is not significant. The charges were joined because they allege the same crime, not because they arose out of the same transaction. No other connection between the counts is required by Rule 8. Any prejudice that results must be dealt with by a motion to sever the counts pursuant to Federal Rule of Criminal Procedure 14. Alvarez waived his Rule 14 motion by failing to renew it at the close of evidence. Since the offenses were properly joined, the district court did not err.
 
 III. Jury Instruction on Duress Defense
 
 21
 It is not entirely clear whether a district court's denial of a proposed jury instruction should be reviewed de novo or for an abuse of discretion. Compare United States v. Lopez, 885 F.2d 1428, 1434 (9th Cir.1989) (de novo), cert. denied, 493 U.S. 1032 with United States v. Busby, 780 F.2d 804, 806 (9th Cir.1986) (abuse of discretion). We do not need to resolve the question here because Alvarez's challenge fails under either standard of review.
 
 
 22
 In its instruction to the jury on the elements of the duress defense, the district court included a requirement that the jury find that the defendant intended to submit to the proper authorities when he had attained a position of safety. Prisoners caught in the act of escaping must show an intent to surrender had the escape succeeded, to establish the defense of duress. United States v. Williams, 791 F.2d 1383, 1388 (9th Cir.), cert. denied, 479 U.S. 869 (1986). The instruction correctly applied Williams.
 
 
 23
 IV. Sufficiency of Evidence for Escape Conviction
 
 
 24
 There is sufficient evidence to support a conviction if " 'reviewing the evidence most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " United States v. Bishop, 959 F.2d 820, 829 (9th Cir.1992) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).
 
 
 25
 To prove the escape charge in Count Seven, alleging a violation of 18 U.S.C. § 751(a), the prosecution had to prove that Alvarez absented himself from custody without permission and that he knew his actions would result in his leaving physical confinement without permission. United States v. Bailey, 444 U.S. 394, 407-08 (1980). Alvarez claims that he did not leave the confines of any restraint and that he lacked the requisite intent.
 
 
 26
 The evidence presented at trial showed that Alvarez had been placed in a holding cell at the United States Marshal's Office after a court appearance regarding the hostage taking incident. One of the doors to the cell inadvertently had been left unlocked and Alvarez exited through that door and ran into the adjacent parking garage of the federal building. He was captured on a ramp in the garage after being observed by security officers monitoring surveillance equipment. Alvarez argues that he was merely trying to enjoy a moment of relief from the tight security, but did not intend to escape. Viewing the evidence in the light most favorable to the government, Alvarez had the requisite intent to escape. When he left the holding cell, he knew that his actions would result in his leaving physical confinement without permission.
 
 
 27
 Alvarez also claims that he did not absent himself from custody because he remained in the parking garage of the federal building. But he was confined to his holding cell, not the federal building parking garage. The fact that Alvarez remained in the same building and did not step out onto a public sidewalk is not material. He left the confines of custody by exiting the holding cell and entering the parking garage.
 
 
 28
 The evidence presented by the government is sufficient to support a conviction for escape in violation of 18 U.S.C. § 751(a), and thus the conviction is affirmed.
 
 V. Evidence of Prior Bad Acts
 
 29
 A district court's decision to admit evidence of other bad acts is reviewed for an abuse of discretion. United States v. Ayers, 924 F.2d 1468, 1472 (9th Cir.1991).
 
 
 30
 Alvarez claims that the district court erred in allowing the government to present evidence of prior bad acts to rebut his duress defense. In particular, he challenges the presentation of testimony concerning a 1985 assault with a baseball bat, his admission to a police officer that same year that he was kicked out of Cuba after being convicted of some crimes, and his conduct in negotiating the $1 million cocaine deal with government agents. Under Federal Rule of Evidence 608(b), extrinsic evidence of these specific instances of conduct would be inadmissible if introduced for the purpose of attacking Alvarez's credibility. The government contends that the evidence was introduced to rebut Alvarez's duress defense.
 
 
 31
 A defense of duress requires that a defendant have a "well grounded fear of imminent death or serious injury unless he complies with his captor's wrongful commands." United States v. Hearst, 563 F.2d 1331, 1335 n. 1 (9th Cir.1977). Prior bad acts are admissible to rebut a defense that alleges lack of requisite intent, such as duress. "[A] prior act can be probative of intent because the fact that the defendant had an unlawful intent at the time he committed the extrinsic offense makes it less likely that he had a lawful intent when he performed the acts charged as the present offense." United States v. McCollum, 732 F.2d 1419, 1424 (9th Cir.), cert. denied, 469 U.S. 920 (1984).
 
 
 32
 In this case, Alvarez asserted a duress defense and supported it with a substantial amount of evidence to show that his personality is such that he would easily succumb to the influence of codefendant Bravo. The government presented the extrinsic evidence of prior bad acts to contest Alvarez's alleged state of mind. In addition, Alvarez's conduct in the cocaine deal was introduced to prove the nature of his prior relationship with Bravo, which became relevant when Alvarez testified that he became involved in the hostage incident due to duress from Bravo. The district court did not abuse its discretion by allowing the prosecution to present the disputed evidence.
 
 VI. Admissibility of Prior Escape Attempts
 
 33
 A district court's decision to admit evidence under Federal Rule of Evidence 404(b) is reviewed for an abuse of discretion. United States v. Houser, 929 F.2d 1369, 1373 (9th Cir.1990). A district court's decision on balancing the probative value of evidence against its prejudicial effect is also reviewed for an abuse of discretion. United States v. Perkins, 937 F.2d 1397, 1400 (9th Cir.1991).
 
 
 34
 The government presented evidence of two prior escape attempts by Alvarez pursuant to Federal Rule of Evidence 404(b). The Ninth Circuit has articulated a four part test for admitting evidence under this rule: "(1) there must be proof of the prior bad act based on sufficient evidence; (2) the crimes or acts must not be too remote; (3) the prior conduct must be similar to the acts the defendant is charged with; and (4) the evidence must prove an essential element of the offense." Houser, 929 F.2d at 1373. All of these elements were met in this case.
 
 
 35
 The government presented sufficient evidence of both incidents. On May 19, 1990, Alvarez broke the window of his cell with a steel bar, and when his cell was searched, officers found eighty-eight feet of braided bedsheets. On July 13, 1990, guards discovered that Alvarez had created a large hole in the ceiling of his cell and had placed towels, steel bed support bars, a razor blade, and some coveralls in the hole. These prior efforts to escape both occurred within seven months of the December 17-18, 1990 hostage incident. They are also similar to the escape and attempted escape charges alleged in the indictment in this case. The fourth element was met because the prior incidents were introduced to prove Alvarez's intent to escape during the hostage taking incident and his escape from custody on January 16, 1991. It was also presented to rebut Alvarez's duress defense.
 
 
 36
 The district court did not abuse its discretion in allowing the government to present evidence of the two prior escape attempts under Federal Rule of Evidence 404(b). The prior escape attempts are quite probative on the issue of Alvarez's intent, especially in light of his duress defense. Thus, the district court's Rule 403 determination that any unfair prejudice did not substantially outweigh the probative value of the evidence was not an abuse of discretion.
 
 VII. Request for Surrebuttal
 
 37
 A district court's ruling on the exclusion of surrebuttal evidence is reviewed for an abuse of discretion. United States v. Butcher, 926 F.2d 811, 817 (9th Cir.), cert. denied, 111 S.Ct. 2273 (1991).
 
 
 38
 A trial court has broad discretion to exclude surrebuttal evidence that it deems cumulative. McCollum, 732 F.2d at 1426. Alvarez argues that the district court erred by not allowing him to respond to damaging evidence presented by the government. He does not explain what such evidence would be, and why it is not cumulative.
 
 
 39
 Alvarez was able to address all of the evidence on cross-examination of the government's witnesses or redirect of his own witnesses. While it might have been more usual to allow the defendant to return to the stand to respond to the rebuttal evidence, the trial judge's decision to the contrary was within his broad range of discretion.
 
 
 40
 VIII. Access to Personnel Files of Prison Guards
 
 
 41
 Alvarez requests that this court review the personnel files of MCC guards Houston and Gibson to determine whether the district court abused its discretion by holding that no material was contained in those files that would require they be turned over to the defense. The trial judge twice reviewed the files in camera, and found nothing exculpatory or otherwise material to the defense. It is hard to see what materiality they could have. Defendant offers no reason to suppose that this was an abuse of discretion, and we see no reason to review the files ourselves.
 
 
 42
 IX. District Court's Failure to Exercise Discretion in Sentencing
 
 
 43
 Generally, a district court's discretionary refusal to depart from the Sentencing Guidelines is not reviewable on appeal. United States v. Morales, 972 F.2d 1007, 1011 (9th Cir.1992). If the trial court indicates, however, that it did not have the discretion under the Guidelines to depart, that determination is reviewed de novo because it involves an interpretation of the Guidelines. United States v. Reyes-Alvarado, 963 F.2d 1184, 1189 (9th Cir.), cert. denied, 113 S.Ct. 258 (1992).
 
 
 44
 Alvarez contends that because the district court did not acknowledge its authority to depart from the Sentencing Guidelines to adjust for "incomplete duress," the sentence should be vacated. The transcript of the sentencing proceedings shows that the district judge believed that the sentence was fair and proper. The judge also stated that he "considered departing" from the recommended criminal history category because he felt it underrepresented Alvarez's criminal history. Although he chose to defer to the more lenient recommendation in the presentence report, the district judge understood that he had the power to depart from the Guidelines. In addition, defense counsel specifically requested a downward departure in the sentence due to mitigating factors regarding Alvarez's conduct.
 
 
 45
 When a district court imposes a sentence without comment on its authority to depart from the Guidelines despite a defendant's request for departure, this court has assumed "that the district court knows and applies the law correctly, realizes that it does have authority to depart, but concludes that it would be inappropriate to do so on the facts of the particular case." United States v. Garcia-Garcia, 927 F.2d 489, 491 (9th Cir.1991). The district court understood its power to depart from the Guidelines, but chose not to exercise that power. Thus, the discretionary refusal to depart from the Guidelines will not be reviewed on this appeal, and the judgment of the district court is
 
 
 46
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Since Alvarez and Bravo barricaded the door to obstruct the view into the cell, Houston was the only government witness to a number of the alleged abuses