21 F.3d 1117
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Leonard LIZALDE, Enrique Romo-Lopez, Defendants-Appellants.
 Nos. 93-10114, 93-10224.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 7, 1994.
Decided March 31, 1994.
 
 Before: HUG, FARRIS, and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Leonard Lizalde and Enrique Romo-Lopez appeal their convictions of conspiracy to possess with intent to distribute marijuana and cocaine in violation of 21 U.S.C. Secs. 841(a) and 846. We have jurisdiction under 28 U.S.C. Sec. 1291. We affirm both convictions, but remand for resentencing of Romo-Lopez.
 
 I.
 
 3
 Both defendants contend that a prejudicial variance existed between their indictment, which charged a single conspiracy, and the proof introduced at trial, which the defendants contend established multiple conspiracies. Each defendant claims that the variance constituted reversible error. We disagree.
 
 
 4
 A variance occurs when the evidence offered at trial proves facts that are materially different from those alleged in the indictment. United States v. Von Stoll, 726 F.2d 584, 586 (9th Cir.1984). "A variance between indictment and proof does not require reversal unless it affects the substantial rights of the parties." United States v. Kaiser, 660 F.2d 724, 730 (9th Cir.1981), cert. denied, 455 U.S. 956 (1982).
 
 
 5
 The threshold inquiry of variance is whether there was substantial evidence to convict each defendant of the charged single conspiracy. United States v. Bibbero, 749 F.2d 581, 587 (9th Cir.1984), cert. denied, 471 U.S. 1103 (1985). Whether a single conspiracy has been proved is essentially a question of sufficiency of the evidence. Id. at 586. There is sufficient evidence to support a conviction if, " 'viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " Id. at 586-87 (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).
 
 
 6
 We apply a factors analysis to distinguish a single conspiracy from multiple conspiracies. Bibbero, 749 F.2d at 587. The relevant factors include the nature of the scheme, the identity of the participants, the quality, frequency, and duration of each conspirator's transactions, and the commonality of time and goals. Id. "The evidence need not be such that it excludes every hypothesis but that of a single conspiracy; rather, it is enough that the evidence adequately supports a finding that a single conspiracy exists." United States v. Kenny, 645 F.2d 1323, 1335 (9th Cir.), cert. denied, 452 U.S. 920 (9181).
 
 
 7
 We conclude there was sufficient evidence for the jury to reasonably conclude that the defendants participated in the single charged conspiracy. A single conspiracy emerges from the evidence adduced at trial. First, the nature of the scheme throughout was to provide drugs to the undercover agent and to obtain money, primarily for Lizalde's legal expenses. Second, the identity of the participants remained constant. Throughout the trial, the focus was on Lizalde, his brother Fred, and Romo-Lopez. Third, the coconspirators were in regular contact with one another during the five-month period charged in the indictment. They kept each other apprised of the developments, and each coconspirator was significantly involved in the conspiracy. Finally, the same three coconspirators were involved from the beginning until the end, and no new coconspirator was introduced as connected to the charged conspiracy.
 
 
 8
 Because we decide that the jury could have reasonably concluded that a single conspiracy existed between the defendants, we need not consider whether the defendants' rights were prejudiced.
 
 II.
 
 9
 Lizalde next contends that the district court erred by improperly admitting evidence of his incarcerated status for a prior conviction during his current drug trial. He argues that the evidence was improperly admitted under Federal Rules of Evidence 403 and 404(b). We disagree.
 
 
 10
 We review a district court's decision balancing the probative value of evidence against its prejudicial effect under Rules 403 and 404(b) for abuse of discretion. United States v. Kessi, 868 F.2d 1097, 1107 (9th Cir.1989). The district court is given wide latitude. United States v. Kinslow, 860 F.2d 963, 968 (9th Cir.1988), cert. denied, 493 U.S. 829 (1989).
 
 
 11
 Rule 404(b) prohibits the introduction of prior criminal conduct to show that the defendant has a "bad character" or that he is likely to act in conformity with his bad character. United States v. Bailleaux, 685 F.2d 1105, 1109 (9th Cir.1982). However, the rule provides that character evidence may be admissible for other purposes, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed.R.Evid. 404(b).
 
 
 12
 We conclude that the district court properly admitted evidence of Lizalde's incarceration during the commission of the conspiracy. The evidence was offered to show more than Lizalde's criminal disposition. It filled in the necessary gaps, including why Lizalde was absent during all the meetings between the other coconspirators and the undercover agent. See, e.g., United States v. Champion, 813 F.2d 1154, 1172-73 (11th Cir.1987) (court admitted evidence that defendant was in prison and halfway house during conspiracy to make crime comprehensible to the jury; prevented jury from placing undue weight on defendant's absence).
 
 
 13
 Additionally, proof of the incarceration helped establish motive: the conspiracy originally was formed to defray Lizalde's legal costs. See, e.g., United States v. Robinson, 956 F.2d 1388, 1397 (7th Cir.) (evidence of prior incarceration admissible to explain why defendant began distributing cocaine: to support his family), cert. denied, 113 S.Ct. 654 (1992). Further, it helped establish Lizalde's knowledge of the drug business. Lizalde's prior exposure was necessary to prove that Lizalde was the backbone of the operation. The evidence also explains Lizalde's use of catering terms on the telephone to disguise the drug transactions.
 
 
 14
 Furthermore, the evidence was more probative than prejudicial, and thus the court properly admitted the evidence under Federal Rule of Evidence 403. The court charged the jury with a limiting instruction to help curb any prejudice. The district court did not abuse its discretion by admitting the evidence.
 
 III.
 
 15
 Lizalde's third contention is that insufficient evidence existed to convict him of conspiracy to possess and distribute cocaine. We disagree.
 
 
 16
 There is sufficient evidence to support a conviction if, " 'after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " United States v. Bishop, 959 F.2d 820, 829 (9th Cir.1992) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).
 
 
 17
 The essential elements of a conspiracy are: 1) an agreement to accomplish an illegal objective; 2) the commission of an overt act in furtherance of the conspiracy; and 3) the requisite intent necessary to commit the underlying offense. United States v. Taren-Palma, 997 F.2d 525, 536 (9th Cir.1993), cert. filed, (Jan. 18, 1994). "Once the existence of a conspiracy is shown, the government need only prove a slight connection between the defendant and the conspiracy." Id.
 
 
 18
 Lizalde concedes that a cocaine conspiracy existed; he merely maintains that he was not a member of that conspiracy. However, "[a] defendant's knowledge of and participation in a conspiracy may be inferred from circumstantial evidence and from evidence of the codefendants' actions." Id.
 
 
 19
 We conclude that sufficient evidence existed to support Lizalde's conviction for conspiracy to possess and distribute cocaine. Lizalde arranged the meeting between his brother and the alleged buyer, the undercover DEA agent. Lizalde's brother informed him that the buyer requested both cocaine and marijuana. Lizalde discussed the sale of cocaine over the telephone with his brother, including the topic of cocaine prices. This is sufficient evidence for the jury to conclude that Lizalde was involved in the cocaine conspiracy.
 
 IV.
 
 20
 Romo-Lopez contends that the district court erred under Federal Rules of Evidence 403 and 404(b) by improperly admitting evidence of his prior drug activity. He argues that the evidence he provided to the undercover agent should have been excluded as unduly prejudicial. We disagree.
 
 
 21
 We review a trial court's decision to admit evidence pursuant to Rules 403 and 404(b) for abuse of discretion. United States v. Arambula-Ruiz, 987 F.2d 599, 602 (9th Cir.1993). Prior bad act evidence, including prior distribution of drugs and testimony of other drug transactions, may be admissible under Federal Rule of Evidence 404(b) if it is admitted to show motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake, and not to show bad character. United States v. Houser, 929 F.2d 1369, 1373 (9th Cir.1990). The evidence's probative value must outweigh its prejudicial effect. Id.
 
 
 22
 The Government presented evidence that Romo-Lopez asked the undercover agent for a place to "stash" his marijuana supply, that Romo-Lopez informed him that he was waiting for a 20-ton shipment of marijuana, and that Romo-Lopez was attempting to collect one million dollars owed to him from a prior drug transaction. The district court admitted the evidence to establish motive, plan, intention, or opportunity.
 
 
 23
 To determine whether the district court properly admitted the evidence under Rule 404(b), the following four factors must be established:
 
 
 24
 1) there must be proof of the prior bad act based on sufficient evidence;
 
 
 25
 2) the crimes or acts must not be too remote;
 
 
 26
 3) the prior conduct must be similar to the acts defendant is charged with; and
 
 
 27
 4) the evidence must prove an essential element of the offense.
 
 
 28
 Houser, 929 F.2d at 1373. "We have uniformly recognized that the rule is one of inclusion and that other acts evidence is admissible whenever relevant to an issue other than the defendant's criminal propensity." United States v. Mehrmanesh, 689 F.2d 822, 830 (9th Cir.1982).
 
 
 29
 Because each prerequisite for admitting prior bad act evidence is satisfied, we conclude that the court did not err in admitting the evidence. First, the evidence goes to a material element of the crime. Intent and knowledge are material elements of both the conspiracy aspect and the distribution aspect of the charged offense. United States v. Jones, 982 F.2d 380, 382 (9th Cir.1992). Second, the evidence was sufficiently similar to Romo-Lopez's current charged conduct; in fact, it arose from the same transaction. Third, sufficient evidence of the prior bad acts existed because the testimony at trial was elicited from the undercover agent to whom Romo-Lopez made the comments. Finally, the bad acts were not too remote in time, as most of them were occurring concurrently with Romo-Lopez's dealings with the undercover agent.
 
 
 30
 Nor did the court err in concluding that the statements were not unduly prejudicial under Rule 403. "In balancing probative value against possible prejudice, the court must consider the need for the particular evidence 'to prove a particular point.' " United States v. Morris, 827 F.2d 1348, 1350 (9th Cir.1987) (citation omitted), cert. denied, 484 U.S. 1017 (1988). Romo-Lopez likely made the statements to convince the undercover agent that he could provide him with the desired drugs. The evidence corroborated the agent's testimony that Romo-Lopez was negotiating a drug deal with him. Furthermore, the court provided the jury with a limiting instruction which minimizes undue prejudice. Houser, 929 F.2d at 1373.
 
 V.
 
 31
 Romo-Lopez contends that the district court improperly included 100 kilograms of cocaine when it sentenced him. We agree.
 
 
 32
 When sentencing a defendant for an incomplete drug conspiracy, the sentencing court may base the sentence upon the amount of negotiated drugs. U.S.S.G. Sec. 2D1.1, app. n. 12. The application note states:
 
 
 33
 where the court finds that the defendant did not intend to produce and was not reasonably capable of producing the negotiated amount, the court shall exclude from the guideline calculation the amount it finds the defendant did not intend to produce and was not reasonably capable of producing.
 
 
 34
 Id. The language in the note is read conjunctively; thus, the defendant must prove both lack of intent and lack of capability. United States v. Barnes, 993 F.2d 680, 682 n. 1 (9th Cir.1993).
 
 
 35
 The trial court sentenced Romo-Lopez based on 300 pounds of marijuana and 100 kilograms of cocaine. Romo-Lopez never delivered any drugs to the agent; thus, the court sentenced him based on the negotiated amount of drugs. Romo-Lopez only challenges the inclusion of 100 kilograms of cocaine.
 
 
 36
 We review the sentencing court's factual findings concerning whether the defendant was "reasonably capable of producing the negotiated amount" of drugs in an incomplete conspiracy for clear error. United States v. Monroe, 943 F.2d 1007, 1018-19 (9th Cir.1991), cert. denied, 112 S.Ct. 1585 (1992). The Government bears the burden of establishing the amount of negotiated drugs; then the burden shifts to the defendant to prove that he was not capable and did not intend to produce that amount. Barnes, 993 F.2d at 683.
 
 
 37
 After reviewing the record, we conclude that Romo-Lopez satisfied his burden of proving that he did not intend to produce, nor was he reasonably capable of producing, 100 kilograms of cocaine. The court derived the negotiated amount of drugs from a meeting that took place between Romo-Lopez and the undercover agent in Tucson on January 5, 1992. At that meeting, Romo-Lopez offered to sell the agent 100 kilograms of "yellow" cocaine, a low-quality, difficult-to-sell product. The agent accepted the offer at that meeting. Thereafter, the agent telephoned Romo-Lopez on January 9, after Romo-Lopez paged the agent, to determine if anything had happened. Romo-Lopez responded that he would take care of the cocaine when he returned from Mexico in a few days. Although Romo-Lopez had the agent's beeper number and an undercover number at the DEA headquarters, he never contacted the agent again. Finally, Romo-Lopez spoke to Fred Lizalde after the meeting in Tucson, and Romo-Lopez informed Fred that no cocaine was available.
 
 
 38
 It appears that Romo-Lopez was testing the agent to determine whether he was an undercover agent. Furthermore, the agent testified that he believed that Romo-Lopez may have been "baiting" him because only cops would accept such bad cocaine. The agent stated: "Well, maybe this guy is puffing also, and he doesn't have the capability, it doesn't seem like it is a credible deal." This evidence is sufficient to establish that the defendant did not have the intent or the capability to produce 100 kilograms of cocaine.
 
 
 39
 We conclude that the court clearly erred by basing Romo-Lopez's sentence on 100 kilograms of cocaine. We vacate Romo-Lopez's sentence and remand for resentencing based only on 300 pounds of marijuana.
 
 
 40
 AFFIRMED in part; VACATED and REMANDED in part.
 
 
 41
 FARRIS, Circuit Judge, concurring and dissenting:
 
 
 42
 I join the majority with respect to Parts I-IV. However, I must respectfully dissent as to Part V. In my opinion, the district court did not clearly err in its determination that Romo-Lopez did not carry his burden of proving by a preponderance of the evidence that he was not capable of producing 100 kilograms of cocaine. United States v. Monroe, 943 F.2d 1007, 1018-19 (9th Cir.1991), cert. denied, 112 S.Ct. 1585 (1992).
 
 
 43
 As the majority notes, the sentencing guidelines placed the burden on Romo-Lopez of proving 1) that he lacked the intent to produce the cocaine and 2) that he lacked the capability to produce the cocaine. See U.S.S.G. Sec. 2D1.1, comment. (n. 12). See also United States v. Barnes, 993 F.2d 680, 682 n. 1 (9th Cir.1993).
 
 
 44
 Romo-Lopez satisfied that burden with respect to his intent. If we were reviewing de novo, one might also conclude that Romo-Lopez satisfied his burden with respect to whether he was reasonably capable of producing the cocaine. I cannot, however, conclude that the district court's contrary conclusion was clearly erroneous.
 
 
 45
 In Romo-Lopez's favor, he never contacted the DEA agent after the initial deal was concluded. This evidence might imply that he was incapable of producing the cocaine. However, it more likely implies that he simply did not intend to produce the cocaine. Also in Romo-Lopez's favor, he later spoke with Fred Lizalde and informed him there was no cocaine available. Again, the evidence could mean that he was incapable of producing the cocaine. However, it could just as easily mean that because he lacked the intent to produce the cocaine, he was unwilling to make the cocaine available to Lizalde.
 
 
 46
 The majority finds the DEA agent's testimony persuasive with respect to Romo-Lopez's capability. However, the agent's conclusions were based on inferences that were legally incorrect. The agent stated: "Well, maybe this guy is puffing also, and he doesn't have the capability, it doesn't seem like it is a credible deal." The lack of capability inference was drawn from the "puffing." We have noted that evidence of puffing goes to intent, not capability. Barnes, 993 F.2d at 682 n. 1 ( citing United States v. Mahoney, 972 F.2d 139, 142 (7th Cir.1992)). Thus, I find that the majority's reliance on the DEA agent's testimony is misplaced.
 
 
 47
 The court did not clearly err in basing Romo-Lopez's sentence on 100 kilograms of cocaine. I would affirm.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3