26 F.3d 133
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Martel Alvarez CHAVEZ, Defendant-Appellant.
 No. 93-10177.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 12, 1994.
Decided May 26, 1994.
 
 Before: SCHROEDER, D.W. NELSON, and CANBY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Martel Chavez ("Appellant") appeals his conviction on one count of conspiracy to possess with intent to distribute and distribute cocaine in violation of 21 U.S.C. Sec. 846. We have jurisdiction under 28 U.S.C. Sec. 1291. We affirm.
 
 I.
 
 3
 Appellant, pursuant Fed.R.App.Proc. 28(i), has adopted the arguments made by Appellant Sanchez that a multiple-object conspiracy under 21 U.S.C. Sec. 846 cannot be charged, and that a new trial is necessary because the jury failed to identify the object of the conspiracy or the extent of Chavez's participation in the conspiracy or the conspiracy's parameters. For the reasons stated in Part I of the disposition filed today in Sanchez's appeal, United States v. Sanchez (No. 93-10156), we reject these arguments.
 
 II.
 
 4
 Appellant also contends that the district court admitted certain evidence in violation of Federal Rules of Evidence 404(b) and 403. Over objection by Appellant, the district court admitted evidence of the following three events: 1) that Appellant and his brother, Adam Chavez, were convicted in 1985 of possession with intent to distribute heroin; 2) that Appellant pled guilty in 1986 after a scale, packaging material, and approximately one kilogram of cocaine were found in his apartment; and 3) that a woman, Maria Tajeda, after being arrested in Los Angeles in 1991, testified that she was delivering a kilogram of cocaine for Chavez. Appellant contends that admission of this evidence necessitates a reversal of his conviction.
 
 A.
 
 5
 Under Rule 404(b), evidence of other acts is inadmissible to prove character and action in "conformity therewith" but may be admitted for other purposes, such as to demonstrate "motive, opportunity, intent [or] knowledge." Fed.R.Evid. 404(b). A trial court's decision to admit evidence under Rule 404(b) is reviewed for abuse of discretion. See United States v. Mayans, 17 F.3d 1174, 1181 (9th Cir.1994) (citing United States v. Garcia-Orozco, 997 F.2d 1302, 1304 (9th Cir.1993)).
 
 
 6
 This court has developed a four-part test for applying the Rule. The prior conduct may be admitted if (1) sufficient evidence exists from which the jury could find the prior acts were committed; (2) the evidence is introduced to prove an issue material to the case; (3) the other acts are not "too remote in time"; and (4) "if admitted to prove intent, the other charged acts must be similar to the offense charged." United States v. Bradley, 5 F.3d 1317, 1320 (9th Cir.1993).
 
 
 7
 Even if admissible under Rule 404(b), evidence of prior bad acts "must not be substantially outweighed by the danger of unfair prejudice." United States v. Brown, 880 F.2d 1012, 1014 (9th Cir.1989), as required by Rule 403(b), see Mayans, 17 F.3d at 1183; Bradley, 5 F.3d at 1320. This determination too is reviewed for abuse of discretion. See United States v. Kahn, 993 F.2d 1368, 1376 (9th Cir.1993).
 
 B.
 
 8
 The evidence of other acts was admitted for the purpose of demonstrating both Chavez's knowledge and intent. Appellant, relying on United States v. Powell, 587 F.2d 443, 448 (9th Cir.1978), contends that, because he denied involvement in the conspiracy, knowledge and intent were not material issues in the case; consequently, he maintains that the evidence should have been excluded. However, in United States v. Hadley, 918 F.2d 848 (9th Cir.1990), cert. dismissed, 113 S.Ct. 486 (1992), we characterized the relevant language in Powell as "nonbinding dicta," id. at 852, and noted that conceding the issue of intent does not relieve the government of the burden of proving that element, see id. ("[A defendant] cannot preclude the government from proving intent simply by focusing his defense on other elements of his crime."). Subsequently, in Mayans, we reiterated that "the fact that appellant's defense was non-participation does not render the issue of knowledge irrelevant." Mayans, 17 F.3d at 1182.[1] Therefore, we reject this initial contention.
 
 
 9
 Mayans, however, requires the government to "prov[e] a logical connection between" the other acts "and a material fact at issue in the crime with which he was charged." Id. at 1183. To do this, the government " 'must articulate precisely the evidentiary hypothesis by which a fact of consequence may be inferred from the other acts evidence.' " Id. at 1181 (quoting United States v. Mehrmanesh, 689 F.2d 822, 830 (9th Cir.1982)).
 
 
 10
 The government has supplied such an "evidentiary hypothesis" to justify admission of evidence relating to the 1985 heroin conviction. According to the government, in 1985 an undercover agent approached Martel and Adan Chavez and proposed to purchase heroin from them. Martel replied that he did not "handle the drugs himself," and had his brother, Adan, perform the transaction. Both brothers subsequently were convicted. Part of Chavez's defense in this case was that he spent very little time in Mesa, and, that, although he had some contact with the other alleged conspirators, including Adan, that he never had any knowledge of, or involvement with, the Mesa drug ring. The government's theory is that Chavez largely ran the conspiracy from Tucson, and that evidence of Chavez's knowledge of the conspiracy was necessary. Although the prior conviction involved heroin rather than cocaine, we agree with the government that Martel Chavez's prior association with Adan in a controlled substance transaction that Martel directed, but from which Martel kept a distance, is probative of Appellant's knowledge of the conspiracy here.
 
 
 11
 Gonzalez testified at Chavez's trial that Chavez instructed her and Sanchez on how to break-down cocaine cakes into one-gram units and repackage the drugs. The government contends that the 1986 arrest of Appellant in possession of cocaine, scales, packaging material, and other drug paraphernalia was probative of his knowledge of how to perform these tasks. Although we agree that the prior acts were relevant to this question, such knowledge was not a material issue in the case. It was not an element of the offense. Chavez did not contend he did not know how to run a drug distribution operation, only that he had no knowledge of the particular conspiracy alleged. Accordingly, this second act has "no 'logical thread' connecting [it] with the knowledge at issue in the act charged." Mayans, 17 F.3d at 1182 (emphasis added). Consequently, its admission constituted error.
 
 
 12
 With respect to the 1991 arrest of the woman who claimed to have been in the process of distributing drugs for Chavez in Los Angeles, the government points out that she testified that Martel hired her to pick up 1-5 kilograms of cocaine at a time, store it in her apartment, weigh it out into smaller quantities, distribute the drugs, and return the proceeds to Chavez. In this case Gonzalez testified that she and Sanchez went to Los Angeles to pick up drugs for Chavez, stored and weighed-out the drugs, supplied the drugs to the distributors (Miguel and Adan Chavez), and that Martel Chavez, who usually resided in Tucson, received the proceeds and checked records. The government claims that the similarity of the incidents demonstrates that Chavez had knowledge of the overall distribution and of Sanchez's and Gonzalez's distribution out of their apartment. We agree with the government that this evidence is relevant to an issue in the case as it "tends to demonstrate the existence of a criminal association and plan" and " 'explain[s] the nature of the relationship between coconspirators while placing 'their transaction in context for the jury,' thereby 'show[ing] the background and development of the conspiracy.' " United States v. Jones, 982 F.2d 380, 382-83 (9th Cir.1992) (quoting United States v. McKoy, 771 F.2d 1207, 1214 (9th Cir.1985)). Put otherwise, the evidence is relevant to the precise role that Chavez had in the conspiracy, a role that he disclaimed to have at trial. It thus was relevant to Chavez's "knowledge of and participation in the conspiracy." Id. at 383.
 
 
 13
 Both of the incidents that we believe were relevant to the issues in this case were sufficiently close in time to the 1988-89 conspiracy alleged in this case to satisfy the Rule 404(b) remoteness standard. See United States v. Houser, 929 F.2d 1369, 1373 (9th Cir.1991) (admitting evidence of other acts when each incident occurred within four years of the charged offense). Moreover, Appellant does not contest that sufficient evidence of each act was introduced. Accordingly, the district court's admission of evidence of the first and second other acts was not an abuse of discretion under Rule 404(b).
 
 
 14
 Of course, it still must be enquired, under Rule 403, whether the probative value of the evidence was "substantially outweighed by the danger of unfair prejudice to the defendant." Id. The probative value of the 1985 and 1991 incidents was substantial, although we note that the very similarity to the charged offense that gives rise to their probative value creates a potential for prejudice. See Houser, 929 F.2d at 1373 ("It is always possible that the similarities between the prior acts and the current offense would improperly affect the jury's deliberations...."). In this case, however, the jury repeatedly was instructed that the evidence was admissible "solely [for] the issues of knowledge and intent and are not to be considered as evidence to prove the character of a person or to shoe action in conformity therewith, or for any other purpose." We have held consistently that such instructions reduce substantially the concern that the "similarity between the prior acts and the current offense would improperly affect the jury's deliberations." E.g., Kahn, 993 F.2d at 1377-78; Houser, 929 F.2d at 1373; Hadley, 918 F.2d at 852. Moreover, that the jury acquitted Don Chavez, who was identified to the jury as Martel Chavez's delivery agent in the 1985 heroin transaction, provides an additional reason to believe that the jury followed the court's instructions. " '[T]he best evidence of the jury's ability to compartmentalize the evidence is its failure to convict all defendants on all counts.' " United States v. Baker, 10 F.3d 1374, 1387 (quoting United States v. Unruh, 855 F.2d 1363, 1374 (9th Cir.1987), cert. denied, 488 U.S. 974 (1988)).[2] Accordingly we cannot conclude that the district court abused its discretion in concluding that the probative value of the 1985 and 1991 acts was not "substantially outweighed," Hadley, 918 F.2d at 852 (emphasis added), by the danger of unfair prejudice.
 
 
 15
 Finally, we must determine whether the erroneous admission of the evidence of the 1986 arrest was harmless error. See, e.g., United States v. Robertson, 15 F.3d 862, 870 (9th Cir.1994). We believe that it was. As discussed above, there is reason to believe that, when the jury considered this evidence, it only did so for the limited purpose for which it was instructed the evidence could have been used: to demonstrate knowledge or intent. However, the jury was presented with significant, if not overwhelming, additional evidence on these issues. This included not only Gonzalez's testimony that detailed Chavez's role in the conspiracy, but also bank records that revealed that, between January and June 1989, Appellant deposited $123,732.00 in cash into a bank account during a period in which his restaurant, the only legitimate source of Chavez's income proven at trial, made a profit of $7,241.54. A reasonable inference is that these proceeds were related to the drug conspiracy described by Gonzalez. In light of this evidence, "it is not probable that the [erroneously admitted] evidence materially affected the jurors' verdict." United States v. Arambula-Ruiz, 987 F.2d 599, 605 (9th Cir.1993) (emphasis in original). Accordingly, we conclude that admission of the 1986 incident was harmless error.
 
 III.
 
 16
 For the above reasons, Appellant's conviction is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Appellant additionally maintains that Hadley is distinguishable from this case because in Hadley the government used the evidence to demonstrate the defendant's "specific intent" to commit sexual abuse. See Hadley, 918 F.2d at 851. However, Mayans did not limit its approval of Hadley 's discussion of Powell to instances when the prior acts evidence was used to show "specific intent"; the Mayans court considered precisely the sort of evidence at issue in this case--other incidents involving drugs--for precisely the same reasons they were introduced in this case--to show knowledge or intent. See Mayans, 17 F.3d at 1182-1184. Consequently, we reject Appellant's argument
 
 
 [2]
 The government, at oral argument, did not press its contention, made both in the district court and in its brief to this court, that the prior acts evidence was relevant to "intent." Even assuming arguendo that the evidence could not have been admitted for this purpose, any error was harmless. It is enough that the evidence "could have been admitted" for a proper purpose. United States v. McCollum, 732 F.2d 1419, 1424 (9th Cir.) (emphasis added), cert. denied, 469 U.S. 920 (1984); cf. id. at 1428 (Reinhardt, J., dissenting) (criticizing the majority's "post hoc application of Rules 403 and 404")