**UNITED STATES of America, Plaintiff–Appellee,**

v.

**William T. BARNES, Defendant–Appellant.**

**Nos. 91–50421, 91–50835.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 2, 1993.

Decided May 17, 1993.

Jerald W. Newton, Santa Monica, CA, for defendant-appellant.

Alan G. Dahle, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before SCHROEDER, THOMPSON, and O'SCANNLAIN, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

In this drug conspiracy case involving a "reverse sting," we must decide whether, for sentencing purposes, the government or the defendant bears the burden of proving facts relevant to determining the object of the conspiracy.

## I

Barnes negotiated on behalf of his codefendants and himself for the purchase of fifty kilograms of cocaine from undercover government agents. The transaction was to be consummated in two stages, with Barnes supplying $350,000 in cash in exchange for twenty-five kilograms on each of two consecutive days. On the first day, Barnes brought only $200,000 of the agreed-upon $350,000, but the government apparently allowed him to take possession of the entire twenty-five kilograms. After he took possession of the car containing the cocaine, Barnes and his codefendants were arrested.

Barnes pleaded guilty to one count of conspiracy with the intent to distribute in excess of five kilograms of cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1) and was sentenced under the Sentencing Guidelines to 240 months in prison followed by 5 years supervised release. He appeals his sentence, arguing that the district court improperly based his offense level on the amount of cocaine that he had agreed to purchase instead of the amount that had been delivered. Further, he argues that the district court erred in finding that he was an "organizer or leader" of the criminal enterprise and thus improperly enhanced his offense level. We consider each argument in turn.

## II

Barnes was sentenced under U.S.S.G. § 2D1.4(a), which provides:

> Base Offense Level: If a defendant is convicted of a conspiracy or an attempt to commit any offense involving a controlled substance, the offense level shall be the same as if the object of the conspiracy or attempt had been completed.

Application note 1 to U.S.S.G. § 2D1.4(a) provides in relevant part:

> If the defendant is convicted of an offense involving negotiation to traffic in a controlled substance, the weight under negotiation in an uncompleted distribution shall be used to calculate the applicable amount. However, where the court finds that the defendant did not intend to produce and was not reasonably capable of producing the negotiated amount, the court shall exclude from the guideline calculation the amount that it finds the defendant did not intend to produce and was not reasonably capable of producing.

The district court found that the object of the conspiracy was the entire fifty kilograms for which the parties had negotiated, and set the base offense level at 36.

■ At oral argument, Barnes maintained that he had not negotiated to buy fifty kilograms. Barnes, however, is foreclosed from making this argument. Count one of the indictment alleges that "on or about March 27, 1990 . . . Barnes told [the] Drug Enforcement Administration (DEA) undercover agent . . . that he wanted to buy fifty kilograms of cocaine." Further, the indictment alleges that "on or about May 20, 1990 . . . Barnes told the undercover agent that he would buy fifty kilograms for $14,000 per kilogram." In pleading guilty to this count, Barnes conceded that the amount under negotiation was fifty kilograms.

Barnes argues that even if the amount under negotiation was fifty kilograms, only twenty-five kilograms should be included in the calculation because he was not reasonably capable of producing the $500,000 that it would have taken to buy the remaining twenty-five kilograms of cocaine. Instead, according to Barnes, he was merely "puffing" in negotiating for fifty kilograms.[1]

■ The government contends that this argument was also foreclosed by Barnes'

---

1. Barnes does not explicitly argue that he *did not intend* to produce the entire amount of money under negotiation. Instead, he argues only that he could not produce it. His argument rests upon the assumption that if the district court found *either* that the defendant did not intend to produce or was not reasonably capable of producing the negotiated amount, the district court would have had to exclude it. This assumption is erroneous. The language of the application note is conjunctive, not disjunctive. *United States v. Brooks*, 957 F.2d 1138, 1151 (4th Cir.), cert. denied, —— U.S. ——, 112 S.Ct. 3051, 120 L.Ed.2d 917 (1992). Thus, the district court would have to find *both* lack of intent and lack of capability before excluding the amount. However, as part of his argument that he was not capable of producing the $700,000, Barnes argues that he was merely "puffing"—that is bragging about his capabilities. Other courts have concluded that this sort of braggadocio goes to the *intent* element. *See, e.g., United States v. Mahoney*, 972 F.2d 139, 143 (7th Cir.1992). Thus, we conclude that Barnes addresses both elements, at least implicitly.

guilty plea. We reject this contention. Although the indictment clearly indicated that, as one of the overt acts in furtherance of the conspiracy, Barnes had negotiated for fifty kilograms, it does not explicitly state that the *object* of the conspiracy between Barnes and his codefendants was fifty kilograms. Instead, the object of the conspiracy was defined in the indictment as the violation of section 841(a)(1), without reference to any specific amount. Thus, determining the object of the conspiracy was a task for the district court upon sentencing. Although Barnes conceded that the negotiated amount was fifty kilograms, the negotiated amount must not be included where "the court finds that the defendant did not intend to produce and was not reasonably capable of producing the negotiated amount." U.S.S.G. § 2D1.4 application note 1.

The district court concluded that Barnes had not proven that he could not have produced the additional $500,000. The government, however, presented no evidence that he *was* capable of producing the money. In reaching its conclusion, the court implicitly assigned the burden of proof to the defendant.

We have never addressed whether the defendant bears the burden of proving lack of intent and capability to produce. We emphasize that the government bears the burden of proving the amount under negotiation. Some courts have held once that burden is met that the government *also* bears the burden of proving that the defendant intends to produce and is capable of producing the negotiated amount of drugs or money before the district court can include the entire negotiated amount in the offense level calculation. *See United States v. Bradley,* 917 F.2d 601, 604–05 (1st Cir.1990) (government bears the burden of demonstrating that the defendant fully intended to produce and was reasonably capable of producing the drugs); *United States v. Ruiz,* 932 F.2d 1174, 1183–84 (7th Cir.) (same), *cert. denied,* —— U.S. ——, 112 S.Ct. 151, 116 L.Ed.2d 116 (1991); *see also United States v. Richardson,* 939 F.2d 135, 142–43 (4th Cir.) (burden *implicitly* on government; court refused to include the amount under negotiation because there was nothing in the record to indicate that the defendant was reasonably capable of produc-

ing the cocaine), *cert. denied,* —— U.S. ——, 112 S.Ct. 599, 116 L.Ed.2d 623 (1991).

■ The Sixth Circuit, in contrast, has held that "once the government satisfies its burden in establishing a negotiated amount, the defendants have the burden of proving they were not capable of producing that amount." *United States v. Christian,* 942 F.2d 363, 368 (6th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 905, 116 L.Ed.2d 806 (1992); *accord United States v. Rodriguez,* 896 F.2d 1031, 1033 (6th Cir.1990); *see also United States v. Candito,* 892 F.2d 182, 186 (2d Cir.1989) (*implicitly* placing the burden of proof on the defendant; concluding that because there was no evidence that the defendant was not reasonably capable of producing the negotiated amount, the full negotiated amount would be included in the Guidelines calculus). We agree with this approach. "[T]he burden of proof at sentencing falls on the party seeking to adjust the offense level." *United States v. Howard,* 894 F.2d 1085, 1089 (9th Cir.1990) (holding that the defendant has the burden of proving at sentencing that he was a minor participant). "[T]he government bears the burden of proof if it is attempting to adjust the offense level upwards, but the defendant bears the burden of proof if he is attempting to lower the offense level." *Id.* Thus, the government bears the burden of proving aggravating factors; the defendant, mitigating factors. Although intent and ability to produce are neither clearly aggravating nor mitigating factors, an analysis of the language of the application note leads to the conclusion that combined these are more properly characterized as a mitigating factor for which the defendant bears the burden. As quoted *supra,* the note states: "However, *where the court finds* that the defendant ... was not reasonably capable of producing the negotiated amount, *the court shall exclude* from the guideline calculation the [excess amount]." U.S.S.G. § 2D1.4 application note 1. This language indicates that the baseline is the inclusion of the entire negotiated amount; it is only when the district court affirmatively makes the finding that the offense level is

lowered. Placing the burden on the defendant is thus consistent with the general rule that the defendant bears the burden of proving elements that have the effect of lowering the offense level.

Further, the fact that the language of the application note requires the court to make a finding in the defendant's favor before excluding the negotiated amount seems to suggest that the burden is on the defendant to produce evidence sufficient to support such a finding. Indeed, the language of the statute does not require the court to make a finding in favor of the *government*—i.e., that the defendant *is* reasonably capable of producing the negotiated amount—before the negotiated amount can be included in the calculation. The finding requirement indicates that when the evidence is in equipoise the government prevails.

Finally, the fact that the defendant may be better able to come forward with evidence tending to prove that he or she was not capable of producing the money lends support to characterizing this as a mitigating factor. "[M]itigating circumstances are more likely to be within the defendant's knowledge than the government's. They may require the defendant's testimony which the government may not be able to compel." *Rodriguez*, 896 F.2d at 1033.

In sum, we conclude that the district court properly assigned the burden of proof to the defendant. The district court did not clearly err in finding that Barnes did not meet that burden. Barnes essentially argues that the fact that he brought only $200,000 to the meeting compels the inference that he would not have been able to raise the additional $500,000 necessary to complete the transaction. Such an inference is by no means compelled.[2]

## III

Barnes argues that the district court erred in finding that he was an "organizer or leader

of criminal activity that involved five or more participants," and thus improperly enhanced his sentence under U.S.S.G. § 3B1.1(a).

■■■ The government argues that Barnes waived the right to raise this issue on appeal because he failed to object to the enhancement at the sentencing hearing. This argument has no merit. Although Barnes' arguments at the sentencing hearing focused on other issues, Barnes objected to the section 3B1.1(a) enhancement in his written objections to the presentence report. This is sufficient to preserve the issue on appeal. *See United States v. Avila*, 905 F.2d 295 (9th Cir.1990) (although Avila did not object to an enhancement under § 3B1.1 at the sentencing hearing, he "contested the court's characterization of his role as an 'organizer or leader in his Joint Sentencing Statement,'" properly preserving the issue).

Section 3B1.1 provides:

Based on the defendant's role in the offense, increase the offense level as follows: (a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels. (b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels. (c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.

Application note 3 to section 3B1.1 sets forth the following factors for distinguishing a leadership and organizational role from one of mere management or supervision:

the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

---

2. Barnes also argues that sentencing a defendant on the basis of the amount under negotiation in cases in which the government is the *seller* of drugs leads to "sentencing entrapment," because the negotiated amount reflects police objectives rather than the defendant's guilt. We recently rejected this argument in *United States v. Frazier*, 985 F.2d 1001, 1003 (9th Cir.1993), concluding that the defendant could not complain of entrapment where the purchaser freely contracted to purchase the negotiated amount. Here, Barnes does not argue that he was actually entrapped. His argument is thus without merit.

■ Here, the district court increased Barnes' offense level by four, finding that Barnes was an organizer or leader of the conspiracy. The court adopted the findings in the presentence report, which described Barnes' role as follows: Barnes was the principal negotiator between the government agent and the conspirators, and flew from Los Angeles to Houston for the first meeting. In subsequent meetings, Barnes alone negotiated with the agents over the price of the cocaine and the logistics of the delivery. The money for the transaction—$200,000 in cash—was delivered by Barnes and his assistant Brown, over whom Barnes admits he had authority. Barnes counted the money with the agents in the hotel room where the deal was consummated. When Barnes was arrested, $27,000 in cash was found in his car. Barnes does not contest those facts; instead, he argues that those facts do not support the inference that he was an organizer or leader of the conspiracy.

The finding that a defendant was an organizer or leader has been upheld in analogous situations. The facts in *United States v. Farrell,* 893 F.2d 690 (5th Cir.1990), for example, are strikingly similar to those in this case. There, the Fifth Circuit found that the district court did not clearly err in concluding that the defendant was an "organizer" because the defendant was left in charge of nearly $200,000 in cash; he personally counted the money; he had traveled from Texas to New York in furtherance of the conspiracy; and he held a key to a motel room containing $27,000 in cash. Similarly, in *United States v. Otero,* 890 F.2d 366, 367 (11th Cir.1989), the Eleventh Circuit held that the sentence was properly enhanced under section 3B1.1(a) where the defendant found a seller, set the price of the drugs, and determined a time and a location for the sale. Finally, in *Avila,* 905 F.2d at 298, the Ninth Circuit concluded that the enhancement was proper where the defendant coordinated the procurement and distribution of the drugs. *See also United States v. Monroe,* 943 F.2d 1007, 1019 (9th Cir.1991) (enhancement proper where the defendant exercised decisionmaking authority over the logistics of the sale), *cert. denied,* —— U.S. ——, 112 S.Ct. 1585, 118 L.Ed.2d 304 (1992). Thus, the district court's finding that Barnes was an organizer or leader is not clearly erroneous.

Barnes argues that as a matter of law he cannot be considered an organizer or leader under section 3B1.1(a) because (1) he had authority over only one other participant, and (2) Robert Woods, one of his codefendants, exercised significantly greater authority over the enterprise. Neither factor is dispositive.

■ As to the first, Barnes concedes that there were at least five participants involved in the criminal activity. While an enhancement under section 3B1.1(a) or (b) is proper only in a criminal activity involving more than five participants, there is no requirement, as Barnes seems to suggest, that the defendant *exercise authority over* at least five participants before the enhancement can be applied. Instead, "in order for a defendant to receive an adjustment under § 3B1.1(b) for his role as a manager or supervisor, the defendant must have managed or supervised *at least one other participant.*" *United States v. Helmy,* 951 F.2d 988, 997 (9th Cir.1991) (emphasis added), *cert. denied,* —— U.S. ——, 112 S.Ct. 2287, 119 L.Ed.2d 211 (1992). While merely exercising authority over one participant would perhaps be insufficient to support the enhancement where there was no other indication of leadership, that is not the case here. The fact that Barnes did not supervise more than one participant does not preclude the enhancement as a matter of law.

■ As to the second, the fact that one of Barnes' codefendants occupied a leadership role in the enterprise does not preclude Barnes from also occupying an organizational or leadership role as well. Application note 3 recognizes that there can be more than one person who qualifies as an organizer or leader of a criminal association. U.S.S.G. § 3B1.1 application note 3; *see also United States v. Smith,* 924 F.2d 889 (9th Cir.1991). In this case, the district court found that both Woods and Barnes were leaders.

In short, we conclude that the district court did not clearly err in finding that Barnes was an organizer or leader of the conspiracy; a four-level increase was appropriate.

## IV

In conclusion, the district court properly based Barnes' sentence on the amount of

cocaine he had agreed to purchase from government agents. Further, the district court did not clearly err in enhancing Barnes' offense level under U.S.S.G. § 3B1.1(a). We must therefore uphold his sentence.

AFFIRMED.