9 F.3d 1554
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Alfonso Ramon DIAZ, aka, Ramon Garcia, Defendant-Appellant.
 No. 92-50443.
 United States Court of Appeals, Ninth Circuit.
 Submitted Oct. 20, 1993.*
Decided Oct. 27, 1993.
 
 Before: BEEZER, KOZINSKI and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Alfonso Ramon Diaz appeals his 151-month sentence imposed following jury trial for conspiracy to affect goods in interstate shipment in violation of 18 U.S.C. §§ 371, 1951 and robbery of goods from interstate shipment in violation of 18 U.S.C. § 1951. Diaz contends that the district court erred by making an upward adjustment in his offense level (1) for his conduct as an organizer or leader of the criminal activity and (2) his coconspirators' use of a firearm, bodily injury to the victim, and physical restraint of the victim.[1] We have jurisdiction under 28 U.S.C. § 1291 and we affirm.
 
 
 3
 Diaz, Victoria Concepcion Garcia, Efren Mardueno-Gutierrez, and Apolinario Garcia Paniagua planned to steal cargo from trailer rigs. Diaz asked Steve Pudiquet to join his cargo theft ring as a driver. Diaz purchased a tractor from Pudiquet and rented loading dock space from Ventura Garcia. Diaz also told Frank Clay he needed a driver to help steal trailers. Clay agreed, but informed the Federal Bureau of Investigation of the plans. After stealing an empty Pic 'N' Save trailer and unsuccessfully stealing a J.C. Penney trailer, the group met with Mario Alberto Rios, a security guard at D.S.L. Transportation, and agreed to stage a robbery at the D.S.L. facility. Gutierrez and Paniagua were to tie up Rios to make the robbery appear authentic. On the night of the robbery, Diaz gave Paniagua and Gutierrez guns to carry. While the men were tying up Rios, another security guard, Alfonso Gray, unexpectedly entered the guard booth. Paniagua hit Gray on the head with his weapon, tied his hands and feet with rope, and covered his mouth with duct tape. The group then stole a trailer loaded with toys and Diaz arranged to sell them.
 
 
 4
 * Reasonably Foreseeable Conduct
 
 
 5
 Diaz contends that the use of a firearm, the victim's bodily injury, and physical restraint of the victim were not within the scope of his agreement and were not reasonably foreseeable because the robbery was a "staged event." This contention lacks merit.
 
 
 6
 We review for clear error whether conduct in furtherance of the conspiracy was reasonably foreseeable by the defendant. United States v. Willis, 899 F.2d 873, 874 (9th Cir.1990).
 
 
 7
 The 1990 Guidelines provided for a four-level upward adjustment if a dangerous weapon, including a firearm, was used, U.S.S.G. § 2B3.1(b)(2)(B); a two-level upward adjustment if any victim sustained bodily injury, id. § 2B.3.1(b)(3)(A); and a two-level upward adjustment if any person was physically restrained to facilitate commission of the offense or to facilitate escape, id. § 2B3.1(b)(4)(B). In determining the adjusted offense level, the district court may consider "all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense." Id. § 1B1.3(a)(1). "In the case of criminal activity undertaken in concert with others, ... the conduct for which the defendant 'would be otherwise accountable' also includes conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant." Id. § 1B1.3, comment. (n. 1); United States v. Garcia, 909 F.2d 1346, 1349-50 (9th Cir.1990) (coconspirator's possession of gun reasonably foreseeable given large amount of drugs involved in sale); Willis, 899 F.2d at 875.
 
 
 8
 Here, when Pudiquet asked Diaz his plan to deal with any security guards, Diaz told him "[n]ot to worry about security. They [Gutierrez and Paniagua] will take care of them." Diaz gave Gutierrez and Paniagua firearms to carry during the D.S.L. robbery. Paniagua used his weapon to strike Gray in the head and then restrained him. In addition, Clay, the informant, testified that he was nervous on the night of the D.S.L. robbery because he knew guns were involved and he was afraid someone would get hurt. Finally, before the J.C. Penney robbery, Diaz gave Paniagua a gun to carry and the plan contemplated that Gutierrez would pull a gun on any guards protecting the site and lock them in a trailer.
 
 
 9
 Because Diaz planned to restrain any security guards who might be protecting the trailers, provided the very firearms his coconspirators carried in the robbery of a guarded trailer compound, and stated that they would "take care of" any security guards, it was reasonably foreseeable to Diaz that firearms would be used and that someone might be injured or restrained during the course of the robbery. See Willis, 899 F.2d at 875 (possession of gun by husband reasonably foreseeable to wife because gun visible, she accompanied husband to drug transaction, and she knew his method of operation); see also United States v. Lewis, 787 F.2d 1318, 1324 (9th Cir.) (killing reasonably foreseeable to defendant who provided guns and ammunition for robbery and was present at meeting when coconspirator stated that it might be necessary to "take someone out"), amended by 798 F.2d 1250 (9th Cir.1986). Accordingly, the district court's findings are not clearly erroneous. See Garcia, 909 F.2d at 1350; Willis, 899 F.2d at 875.
 
 II
 Role in the Offense
 
 10
 Diaz contends that the district court erred by finding that Diaz was an organizer or leader of the offenses. This contention lacks merit.
 
 
 11
 We review for clear error the district court's factual finding that a defendant was an organizer or leader of criminal activity. United States v. Smith, 924 F.2d 889, 895 (9th Cir.1991).
 
 
 12
 The Guidelines provide for a four-level upward adjustment "[i]f the defendant was an organizer or leader a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). The defendant must supervise at least one other participant, but need not exercise authority over all the participants. United States v. Barnes, 993 F.2d 680, 685 (9th Cir.1993); Smith, 924 F.2d at 896. In determining whether defendant was an organizer or leader, the district court should consider
 
 
 13
 the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.
 
 
 14
 U.S.S.G. § 3B1.1, comment. (n. 3); e.g., Barnes, 993 F.2d at 684-85 (defendant who was principal negotiator on price and logistics of delivery, attended out-of-state meetings, and handled the money was organizer or leader of cocaine distribution conspiracy); Smith, 924 F.2d at 895-96 (defendant who was source of drugs, managed a codefendant's activities, and directed the distribution of the cocaine was an organizer); United States v. Avila, 905 F.2d 295, 298-99 (9th Cir.1990) (defendant who negotiated price of drugs, handled large amounts of money, had numerous sources for drugs, and coordinated the procurement and distribution of drugs was organizer or leader).
 
 
 15
 Here, the offenses involved five or more participants: Paniagua, Gutierrez, Rios, Victoria Garcia, Ventura Garcia, and Diaz. Diaz recruited two drivers, rented the loading dock, and purchased the tractor necessary to complete the crimes. He selected the trailers to steal, notified the others when the thefts would take place, conducted meetings at his house, and allowed participants to sleep there on the nights of the robberies. Diaz participated in the offenses by breaking the locks on the trailer doors, by monitoring the robberies from his car, and by giving Clay directions when he got lost. Diaz also instructed the others on where to abandon the empty trailers. Diaz also found buyers for the stolen toys, negotiated the selling price, and arranged the logistics of the delivering the toys to them. Diaz handled the weapons and the money. According to the presentence report, Diaz expected to receive a larger share of the profits than the other participants.
 
 
 16
 Because Diaz exercised decision making authority, handled the finances, planned and organized the offenses, recruited accomplices, monitored the activities of the others, and exercised authority over the others, the district court did not clearly err by finding that Diaz's role in the offense was that of organizer or leader. See Barnes, 993 F.2d at 685; Smith, 924 F.2d at 895-96; Avila, 905 F.2d at 298-99.
 
 
 17
 We further reject Diaz's argument that the district court must specifically identify the five participants and then determine that Diaz exercised authority over each participant. See Barnes, 993 F.2d at 685; Smith, 924 F.2d at 896 (enhancement does not require a defendant to supervise personally each participant, sufficient if facts establish defendant organized criminal activity that eventually involved five people). In making its findings at the sentencing hearing, the district court adopted the presentence report, which concluded Diaz was a leader of five or more participants, thereby satisfying its obligation to make findings. See Avila, 905 F.2d at 298 (district court incorporated findings in presentence report that characterized defendant as organizer or leader).
 
 
 18
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Diaz's base offense level for robbery was 20. The district court adjusted the base offense level as follows: four levels for use of a firearm; two levels for bodily injury to a victim; two levels for physical restraint of a victim; one level for loss exceeding $10,000; and four levels for role in the offense. Diaz does not challenge the value of the loss adjustment. With a criminal history category of II, the applicable guidelines range was 151 to 188 months