19 F.3d 1441
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ariel ESCOBEDO, a/k/a Ariel Joquin, a/k/a Ignacio Hernandez,
Defendant-Appellant.
 No. 92-30158.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 3, 1993.
Decided March 18, 1994.
 
 Before: TANG, FARRIS, and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Ariel Escobedo was convicted of conspiracy to distribute five kilograms or more of cocaine, from late 1986 to around February 1989, and of distribution of 500 grams or more of cocaine on or about July 27, 1988. He appeals his convictions and his sentence of life imprisonment. We have jurisdiction under 28 U.S.C. Sec. 1291.
 
 DISCUSSION
 I. Voir dire
 
 3
 Coconspirators T. Michael Thim, Belva Kerby, Wally Lane, Craig Dieffenbach, and Frank Quintana testified against Escobedo in exchange for various agreements with the government. During voir dire, a prospective juror responded that he would disregard, and would not believe, the testimony of an immunized witness, and he was excused for cause by the district court over defense objection.
 
 
 4
 A juror should be excused for cause if a particular belief will "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." Wainwright v. Witt, 469 U.S. 412, 105 S.Ct. 844, 852 (1985). The decision to excuse a juror is reviewed for an abuse of discretion. United States v. Tabacca, 924 F.2d 906, 913 (9th Cir.1991).
 
 
 5
 We have recognized the need for the use of informants, but have chosen to protect against the dangers of informants and immunized witnesses through the use of cross-examination and "a properly instructed jury whose duty it is to assess each witness's credibility." United States v. Bernal-Obeso, 989 F.2d 331, 335 (9th Cir.1993). A juror who is unable to impartially assess a witness's credibility cannot follow those instructions, and it was not an abuse of discretion to excuse the prospective juror.
 
 II. Evidentiary issues
 
 6
 A. The introduction of evidence regarding Escobedo's Nevada cocaine distribution
 
 
 7
 Richard Lamphar testified regarding his purchases of cocaine and methamphetamine from Escobedo from early 1989 until July 29, 1990, when Lamphar agreed to cooperate with the DEA. DEA Agent Ortega also testified about Escobedo's July 29 delivery of cocaine. At the time of trial, a Nevada state prosecution was pending charging Escobedo with the July 29 transaction.
 
 
 8
 Escobedo moved pretrial to exclude evidence of other "bad acts," including these drug transactions in Nevada. "Other act" evidence is only admissible under Rule 404(b), Fed.R.Evid., if (1) it tends to prove a material point, (2) it is not too remote in time, (3) sufficient evidence supports a finding that the defendant committed the other act, and (4) the other act is similar to the offense charged. United States v. Bibo-Rodriguez, 922 F.2d 1398, 1400 (9th Cir.), cert. denied, 111 S.Ct. 2861 (1991). Rule 404(b) does not distinguish between prior and subsequent acts. Id.
 
 
 9
 The district court ruled that the Nevada distribution was "material to show intent, identification, scheme, plan, design" and that the probative value outweighed the prejudicial effect because it was the government's burden to show intent and lack of mistake. The introduction of "other acts" is reviewed for an abuse of discretion. Id.
 
 
 10
 The subsequent Nevada distribution tended to prove a material point regarding Escobedo's intent to engage in the charged conspiracy to distribute cocaine. Escobedo testified that he did not know the alleged coconspirators sold drugs, that their relationships were merely social, that checks he received from Quintana were loans, and that his July 1989 trip to Seattle was for a vacation. Escobedo's subsequent trafficking offense was therefore relevant to whether Escobedo intended to join a conspiracy to distribute cocaine. In United States v. Houser, 929 F.2d 1369, 1373 (9th Cir.1990), we held that evidence of a prior distribution conviction and other drug transactions were properly admitted to show intent where the defendant had argued that he "accidently walked into the situation and was not otherwise engaged in distribution." This situation is clearly analogous.
 
 
 11
 The transactions with Lamphar were also not too remote in time because the first Nevada transaction overlapped the end of the charged conspiracy. Moreover, even though the last Nevada transaction occurred 17 months after the last act of the charged conspiracy, we have upheld the introduction of "other acts" occurring more than 17 months from the date of the crime. See id.; United States v. Ono, 918 F.2d 1462, 1465 n. 2 (9th Cir.1990) (seven years not too remote).
 
 
 12
 Next, Escobedo argues that the Nevada transactions were not similar to the offense charged because they involved different participants, involved methamphetamine as well as cocaine, and occurred in a different place. We have previously rejected arguments differentiating "other acts" on the basis that they involved different drugs or participants than the charged offenses. See Bibo-Rodriguez, 922 F.2d at 1402 (subsequent importation of marijuana relevant to intent to import cocaine).
 
 
 13
 Finally, Escobedo objects that the district court abused its discretion in determining that the probative value of these subsequent transactions outweighed their prejudicial effect. However, any prejudice to Escobedo's case was not unfair, as required for reversal, because it did not inflame the emotions of the jury. See United States v. Bowen, 857 F.2d 1337, 1341 (9th Cir.1988) ("Prejudice does not mean that the defendant's case is merely damaged, for the more probative the evidence is, the more damaging it is apt to be.... Rather, prejudice outweighs probative value where the facts arouse the jury's feelings for one side without regard to the probative value of the evidence, or in other words, if the jury is basing its decision on something other than the established facts and legal propositions in the case."). Further, any prejudicial effect was alleviated by the district court's instructions that the testimony was admitted only for the limited purpose of determining the defendant's intent. See Houser, 929 F.2d at 1373.
 
 
 14
 The admission of evidence regarding Escobedo's Nevada drug transactions was not an abuse of discretion.
 
 
 15
 B. The introduction of evidence of Escobedo's 1986 conviction for heroin importation and prior heroin dealings
 
 
 16
 The district court denied Escobedo's pretrial motion to exclude evidence of his 1986 conviction for heroin importation and prior heroin dealings. The introduction of this evidence is reviewed for an abuse of discretion. Bibo-Rodriguez, 922 F.2d at 1400.
 
 
 17
 Escobedo testified that he did not know Quintana sold drugs. The prior heroin trafficking involved Quintana and was thus directly relevant to Escobedo's testimony that his relationship with Quintana was merely a social one. Further, the heroin conviction occurred the same year that Escobedo was alleged to have entered into the conspiracy and is thus not too remote in time. As previously discussed, the fact that a different drug was involved than in the charged conspiracy does not mandate exclusion of the evidence. The introduction of this evidence was not an abuse of discretion.
 
 
 18
 Escobedo argues that the only way for the government to introduce evidence of the 1986 conviction was to meet the requirements of Rule 609(a)(1), and that the district court's failure to conduct the five-part balancing test required under United States v. Wallace, 848 F.2d 1464, 1473 n. 12 (9th Cir.1988), rendered Rule 609 inapplicable. Because the evidence was admissible under Rule 404(b), however, any error under Rule 609 was harmless. United States v. Mehrmanesh, 689 F.2d 822, 831 n. 10 (9th Cir.1982).
 
 C. The introduction of hearsay statements
 
 19
 A taped conversation between DEA Agent Renee Robinson and coconspirator Wally Lane was played for the jury. Escobedo did not object to the introduction of the tape recording, although he objected to the use of the transcript of the recording. The admission of the tape is thus reviewed for plain error. United States v. Bosch, 951 F.2d 1546, 1549 (9th Cir.1991), cert. denied, 112 S.Ct. 2975 (1992).
 
 
 20
 A statement of a coconspirator is admissible if given "during the course of or in furtherance of the conspiracy." See Fed.R.Evid. 801(d)(2)(e). Coconspirator statements are admissible if
 
 
 21
 made to induce enlistment or further participation in the group's activities; statements made to prompt further action on the part of the conspirators; statements made to reassure members of a conspiracy's continued existence; statements made to allay a co-conspirator's fears; and statements made to keep co-conspirators abreast of an ongoing conspiracy's activities.
 
 
 22
 United States v. Nazemian, 948 F.2d 522, 529 (9th Cir.1991), cert. denied, 113 S.Ct. 107 (1992).
 
 
 23
 Lane's statements regarding "Ariel" were arguably designed to induce Robinson's participation in the conspiracy or to reassure Robinson of the conspiracy's continued existence. Lane was persuading Robinson to purchase cocaine from him despite his difficulty in obtaining a supply from Dieffenbach. Because there is a plausible interpretation of the conversation as being "in furtherance" of the conspiracy, it was not plain error to admit the tape.
 
 
 24
 DEA Agent Stubbs testified regarding post-arrest coconspirator statements about who supplied whom. Although this was clearly inadmissible hearsay, its introduction was harmless because Kerby, Lane, Dieffenbach and Quintana's testimony established Escobedo as the cocaine source. See United States v. Cuevas, 847 F.2d 1417, 1428 (9th Cir.1988), cert. denied, 489 U.S. 1012 (1989).
 
 
 25
 Other hearsay testimony was similarly harmless given the overwhelming non-hearsay evidence against Escobedo.
 
 
 26
 D. Introduction of testimony that Mexican drug dealers lead conservative lifestyles
 
 
 27
 DEA Agent Joe Daly testified that Mexican drug dealers live in conservative neighborhoods and send their money back to Mexico. Escobedo's objection was overruled. The district court's admission of testimony on drug courier profiles is reviewed for an abuse of discretion. United States v. Lim, 984 F.2d 331, 334 (9th Cir.), cert. denied, 113 S.Ct. 2944 (1993).
 
 
 28
 While the "admission of drug courier profile evidence is inherently prejudicial to the defendant because the profile may suggest that innocuous events indicate criminal activity, [and we have] denounced the use of a drug courier profile as substantive evidence of a defendant's innocence or guilt," id. at 334-35, profile evidence can be admitted where the defendant has " 'opened the door' by emphasizing the fact that he did not fit the stereotype of a drug smuggler." Id. at 335. Daly's testimony was in response to defense testimony that Escobedo did not live in an expensive house or drive flashy cars. The admission of this testimony was not an abuse of discretion.
 
 III. Jury instructions
 
 29
 A. Instruction to the jury that it could disregard Escobedo's testimony when he invoked the Fifth Amendment when cross-examined about a pending state charge
 
 
 30
 On cross-examination, the government asked Escobedo about the Nevada transaction with Lamphar, and Escobedo asserted his Fifth Amendment right not to answer. The district court instructed the jury that "since the defendant has refused to answer the question, you may disregard--you may disregard--anything that he says involving this case. You may disregard it." Escobedo moved for a mistrial.
 
 
 31
 A district court's decision to strike a witness's testimony, akin to the sanction imposed in this case, is reviewed for an abuse of discretion. United States v. Negrete-Gonzales, 966 F.2d 1277, 1279 (9th Cir.1992).
 
 
 32
 A defendant who testifies in her own defense waives her right against self-incrimination and subjects herself to cross-examination concerning any matters reasonably related to the subject matter of her direct testimony. The scope of the defendant's waiver is coextensive with the scope of relevant cross-examination. Thus, a defendant may be found to have waived her right to refuse to testify regarding prior bad acts so long as the testimony is otherwise admissible under Fed.R.Evid. 403, and so long as it is being offered for a purpose reasonably related to a material issue in the defendant's testimony on direct examination.
 
 
 33
 United States v. Cuozzo, 962 F.2d 945, 948 (9th Cir.) (quotations omitted), cert. denied, 113 S.Ct. 475 (1992). Because evidence of the subsequent Nevada transactions was admissible under Rules 403 and 404, as previously held, the question is whether cross-examination regarding the Nevada transaction was reasonably related to a material issue in Escobedo's direct testimony.
 
 
 34
 Escobedo placed his intent in issue by testifying on direct that his dealings with Dieffenbach and Quintana were innocent, and the subsequent transactions are relevant to his intent. In Cuozzo, we upheld the compelled answering of questions regarding the defendant's prior fraudulent activities which were relevant to the existent of fraudulent intent in the charged crime. Id. See also United States v. Hearst, 563 F.2d 1331, 1340-41 (9th Cir.1977), cert. denied, 435 U.S. 1000 (1978) (Hearst's testimony that she acted involuntarily "placed in issue her behavior during the entire period from abduction to arrest"). The district court's instruction was not an abuse of discretion.
 
 
 35
 B. Refusal to give an instruction regarding multiple conspiracies
 
 
 36
 A defendant is entitled to a multiple conspiracies instruction if the defendant's theory is supported by law and has some foundation in the evidence. United States v. Anguiano, 873 F.2d 1314, 1317 (9th Cir.), cert. denied, 493 U.S. 969 (1989).
 
 
 37
 A multiple conspiracies instruction is generally required where the indictment charges several defendants with one overall conspiracy, but the proof at trial indicates that a jury could reasonably conclude that some of the defendants were only involved in separate conspiracies unrelated to the overall conspiracy charged in the indictment. The instruction is required because, in such a situation, there is a possibility of prejudicial variance between the indictment and the trial proof. The variance may be prejudicial in a number of ways, but the problem that is of concern here is the possibility of transference or "spillover" of guilt.... However, there is no problem of spillover when, as in this case, the defendant stands trial alone.
 
 
 38
 Id. at 1317-18 (citations and footnote omitted).
 
 
 39
 Although there was evidence at trial that Kerby and Lane were involved in separate conspiracies, this evidence did not implicate Escobedo in transactions not charged in the indictment. The multiple conspiracies instruction is only required when there is evidence that the defendant was involved in a conspiracy other than that charged in the indictment. Any evidence that other people were involved in separate conspiracies was not prejudicial to Escobedo.
 
 C. The biased witness instructions
 
 40
 A district court's formulation of jury instructions is reviewed for an abuse of discretion. United States v. Powell, 955 F.2d 1206, 1210 (9th Cir.1991). This court examines "whether or not the instructions taken as a whole were misleading or represented a statement inadequate to guide the jury's deliberations." Id. (citation omitted).
 
 
 41
 Escobedo objects that the court instructed the jury that the use of immunized witnesses, paid informants, and accomplices has "been approved as lawful and proper" and that accomplice testimony "may be entirely truthful."
 
 
 42
 The district court also instructed the jury that this testimony should be considered with greater caution, and Escobedo cites no authority to support his argument that instructing the jury that the use of immunized testimony, paid informants, and accomplices is lawful "bolstered" the witnesses' testimony. The instructions given, taken as a whole, were not misleading nor represented a statement inadequate to guide the jury's deliberations regarding the use of this testimony.
 
 IV. Alleged Brady and Jencks Act violations
 
 43
 Escobedo moved pretrial to disclose information pursuant to Brady v. Maryland, 373 U.S. 83 (1963) and the Jencks Act, 18 U.S.C. Sec. 3500(b). He specifically requested the Presentence Reports ("PSR's") on all testifying coconspirators who had pled guilty. Although the district court eventually reviewed the PSR's of Dieffenbach, Quintana, and Lane, and ruled that they contained no exculpatory material, the court did not review Kerby's PSR. None of the PSR's were given to the defense.
 
 
 44
 We have reviewed the PSR's of Dieffenbach, Quintana, and Lane. The PSR's of Dieffenbach and Quintana contained impeachment information regarding their agreements to cooperate in exchange for a reduction of sentence. However, Escobedo had been provided the plea agreements reflecting this same information, and the failure to disclose the PSR's was harmless. Lane's PSR does not reveal any exculpatory information.
 
 
 45
 However, because the district court did not examine the PSR of Belva Kerby, it is not in the record for our review. We will remand this claim to the district court so that it can determine whether Kerby's PSR contains exculpatory or impeachment information not otherwise in Escobedo's possession at trial, and if so, whether it was harmless error. See United States v. Rewald, 889 F.2d 836, 868 (9th Cir.1989) (failure of district court to examine documents in camera and subsequent remand to determine whether FBI report fell within scope of Jencks Act), amended on other grounds, 902 F.2d 18 (9th Cir.), cert. denied, 498 U.S. 819 (1990). The district court is instructed to make such findings when resentencing the defendant.[1]
 
 V. Alleged prosecutorial vouching
 
 46
 Where a defendant objects to prosecutorial vouching, this court reviews for plain error. United States v. Kerr, 981 F.2d 1050, 1053 (9th Cir.1992). "Improper vouching occurs when the prosecutor places 'the prestige of the government behind the witness' by providing 'personal assurances of [the] witness's veracity.' " Id. (citation omitted).
 
 
 47
 The government's statement that it is "often necessary to cut some kind of deal" with people low in a drug distribution chain did not deal with the witnesses' veracity or credibility, and thus was not vouching.
 
 
 48
 Second, the government's question to Quintana whether he understood that his plea agreement provided that in return for his cooperation and "truthful testimony" his sentence would be reduced was improper because the question was asserted prior to any attack on Quintana's credibility. See United States v. Monroe, 943 F.2d 1007, 1013 (9th Cir.1991), cert. denied, 112 S.Ct. 1585 (1992) (reference to the "truthful testimony" part of a plea bargain "does not constitute vouching if it is made in response to an attack on the witness's credibility because of his plea bargain.") (emphasis added). However, the vouching was harmless error: the reference to the "truthful testimony" portion was nonrecurring, and was cured by the instruction that the jury should scrutinize the testimony of an immunized witness with greater caution than an ordinary witness. Id. at 1014 n. 7.
 
 
 49
 Third, Escobedo argues that the prosecutor vouched during his closing argument, when he stated that the government had relied upon several accomplice witnesses whose testimony inculpated Escobedo. The prosecutor's remarks emphasized that the testimony of all the accomplice witnesses had been identical on the major points. This was not impermissible vouching.
 
 
 50
 Finally, in response to defense counsel's argument that the government failed to do a fingerprint analysis of the print found on the cocaine, the government stated that when the DEA received the fingerprint report from the FBI, "the government already had strong proof of the defendant's guilt. There was no need to submit the known prints of the defendant to the fingerprint lab, because the government already knew from the witnesses and this other evidence that's been presented through this case who the individual was who was responsible for supplying the cocaine." This statement did not vouch for the credibility of the witnesses, and the explanation was in rebuttal to the defendant's argument. See United States v. Gray, 876 F.2d 1411, 1417 (9th Cir.1989), cert. denied, 495 U.S. 930 (1990).[2]
 
 VII. Sentencing
 
 51
 A. Refusal to compel the attendance of an incarcerated witness at sentencing
 
 
 52
 The district court continued the initial sentencing hearing to allow Escobedo to procure the testimony of Dieffenbach, who had written a letter to one of Escobedo's relatives admitting that Quintana had lied on the stand about the amount of cocaine involved in his transactions with Escobedo. Escobedo was unable to voluntarily procure Dieffenbach's testimony, and the district court held that it could not compel Dieffenbach's testimony. Defense counsel agreed.
 
 
 53
 Escobedo did not have a due process right to present witnesses at the sentencing hearing. See United States v. Upshaw, 918 F.2d 789, 791 (9th Cir.1990), cert. denied, 499 U.S. 930 (1991). Rather, a defendant's due process rights hinge on whether a district court made reliable, adequate findings to support the sentence. See id.; United States v. Rigby, 896 F.2d 392, 394 (9th Cir.1990).
 
 
 54
 Escobedo was given an opportunity to rebut the amount of drugs attributable to the conspiracy when he filed written objections to the PSR and an affidavit. The district court had reason to doubt the reliability and accuracy of Dieffenbach's letter because Dieffenbach's trial testimony was confirmed by other testimony at trial. Quintana reaffirmed his trial testimony at the sentencing hearing. The district court based the sentence on reliable evidence.
 
 
 55
 B. The amount of cocaine handled by the conspiracy
 
 
 56
 It ordinarily satisfies due process to determine the amount of drugs involved by the preponderance of the evidence. United States v. Restrepo, 946 F.2d 654 (9th Cir.1991) (en banc), cert. denied, 112 S.Ct. 1564 (1992). However, there may be an exception when a sentencing factor has an extremely disproportionate effect on the sentence. McMillan v. Pennsylvania, 477 U.S. 79 (1986).
 
 
 57
 The district court found that Escobedo had trafficked in 150-500 kgs. of cocaine. However, that determination did not affect his base offense level. The 1988 version of the Guidelines, employed at sentencing, assigned the highest offense level (36) to 50 kgs. or more of cocaine. The guideline range at Criminal History Category III, level 36, was 235-293 months. Other upward adjustments raised the offense level to 42, which resulted in a guideline range of 360 months to life imprisonment. Because the amount of drugs did not have an affect on the offense level (i.e. the amount of drugs did not mandate the imposition of a life sentence), it was not necessary to apply a "clear and convincing" standard of proof.
 
 
 58
 A preponderance of the evidence supports a finding of 150-500 kgs. of cocaine. Escobedo concedes that the record supports a finding of at least 100 kgs. Quintana's testimony supports a finding of 324 kgs. of cocaine over a six month period, and Dieffenbach testified that Escobedo had supplied him with about 480 kgs over the same period.
 
 C. Statement of reasons for the sentence
 
 59
 Under 18 U.S.C. Sec. 3553(c)(1), a district court must state its reasons for imposing a sentence at a particular point where the guideline range exceeds 24 months. The court must state why the sentence is appropriate in light of "individual considerations of background, character, and conduct, as well as the systemic goals of deterrence, rehabilitation, and consistency in sentencing." Upshaw, 918 F.2d at 792.
 
 
 60
 The district court did not explain its reasons for imposing a life sentence, except for its view that it could not "find anything that would lead the Court to impose any sentence other than life." The sentence is remanded for the district court to articulate its reasons for imposing a life sentence.
 
 
 61
 D. Burden of proof regarding the imposition of a life sentence
 
 
 62
 In imposing the life sentence, the district court stated:
 
 
 63
 I've heard nothing from the defendant that would lead the Court to consider anything other than life....
 
 
 64
 And there has to be, if I understand it, some showing of why [life] shouldn't be imposed....
 
 
 65
 You're the one, and defendant's the one, that's asking for leniency ...
 
 
 66
 I have looked at this, I have heard your client, and I can't find anything that would lead the Court to impose any sentence other than life.
 
 
 67
 Escobedo correctly argues that the district court put the burden on him to justify a sentence other than life imprisonment.
 
 
 68
 In United States v. Howard, 894 F.2d 1085, 1090 (9th Cir.1990), we held that the government bears the burden "for any fact that the sentencing court would find necessary to determine the base offense level." Although we did not address which party bears the burden of showing the appropriate sentence within the guideline range, it seems akin to determining the base offense level, and we hold that the government bears that burden. Upon remand, the district court is directed to resentence the defendant without imposing upon him a burden of showing why a life sentence should not be imposed.
 
 
 69
 E. Upward adjustment for organizer of five or more people
 
 
 70
 U.S.S.G. Sec. 3B1.1(a) provides a four point increase if "the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." Application note 3 states that a court should consider the defendant's decision making authority, the nature of his participation, his involvement in recruiting accomplices, his right to a larger share of the fruits of the crime, the degree of involvement in planning, and the degree of defendant's control or authority over others. A district court's finding that a defendant was a leader in the offense is reviewed for clear error. United States v. Castro, 972 F.2d 1107, 1112 (9th Cir.1992), cert. denied, 113 S.Ct. 1350 (1993).
 
 
 71
 Five people were shown at trial to be involved in the distribution ring: Escobedo, Quintana, Dieffenbach, Lane and Kerby. The evidence at trial showed that Escobedo was clearly the leader of the drug distribution ring. He was the source of the cocaine, sought to hold Lane and Kerby responsible for the 2 kg. of cocaine seized at Thim's arrest, and directed the activities of both Dieffenbach and Quintana. The court's finding was not clearly erroneous.
 
 
 72
 F. Conspiracy conviction as a "straddle" offense subject to the Sentencing Guidelines
 
 
 73
 The Sentencing Guidelines apply to a conspiracy initiated before but completed after the effective date of the Guidelines. See Castro, 972 F.2d at 1111. Escobedo was properly sentenced under the Guidelines, under which parole is not available.
 
 
 74
 CONVICTION AFFIRMED, SUBJECT TO LIMITED REMAND FOR EXAMINATION OF BELVA KERBY'S PRESENTENCE REPORT FOR EXCULPATORY INFORMATION. SENTENCE VACATED AND REMANDED FOR RESENTENCING.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Escobedo's sentencing claims are discussed later in this disposition
 
 
 [2]
 We reject Escobedo's argument that the cumulative effect of the district court's errors is "so prejudicial as to require reversal." United States v. Necoechea, 986 F.2d 1273, 1282 (9th Cir.1993)